SNOW *et al. v.* JOHNSTON *et al.*

No. 14665. NOVEMBER 10, 1943. ADHERED TO ON REHEARING, DECEMBER 1, 1943.

*Mallory C. Atkinson* and *Martin, Martin & Snow,* for plaintiffs in error. *E. P. Johnston* and *Hall & Bloch,* contra.

GRICE, Justice. ■ The parties will be referred to as they appeared in the trial court. The plaintiffs are residents of the City of Macon, residing on property owned by them, located within an area embraced within a legally established zoning district in which, subject to exceptions hereinafter noted, property may not be used for any purpose other than for homes, apartment-houses, or churches. The residence of Johnston is 551 feet from the steps of the building proposed to be used by the defendants; that of the Olivers slightly farther. By reason of the foregoing recitals they were in a position to apply for an injunction against the operation of a business within the restricted area, in violation of the zoning

ordinance. *Enzor* v. *Askew,* 191 *Ga.* 576 (13 S. E. 2d, 374); Pritz *v.* Messer, 112 Ohio St. 628 (149 N. E. 30); Holzbauer *v.* Ritter, 184 Wis. 35 (198 N. W. 852); Sapiro *v.* Frisbie, 93 Cal. App. 299 (270 Pac. 280). See *Morris* v. *Lunsford,* 176 *Ga.* 50 (167 S. E. 297).

■ When a plaintiff seeks to enjoin the use of a building for business purposes in an area in a municipality wherein such use is forbidden by a valid municipal ordinance, it is not necessary for him to show that he will sustain substantial financial loss by such use. A home owner in such restricted area may well be said to suffer a damage not shared by the public, even though material financial loss be not involved. Welton *v.* 40 East St. Bldg. Corp., 70 Fed. 2d, 377; Fitzgerald *v.* Merard Holding Co., 110 Conn. 130 (147 Atl. 513, 54 A. L. R. 361).

"To warrant relief by injunction in the case of covenant restricting erection upon the premises conveyed, it is not essential that the plaintiff should show any actual damage resulting from the breach of covenant of which he complains." 2 High on Injunctions (4th ed.), §§ 1142, 1158. The rule embraced within the quoted words has been recognized by this court as sound. *Phillips* v. *Blackwell,* 164 *Ga.* 856 (139 S. E. 547); *Smith* v. *Pindar Real Estate Co.,* 187 *Ga.* 229 (200 S. E. 131). There is no reason why the same principle is not applicable with as much or greater force to property in a particular area of a municipality where the restrictions exist, not by reason of any covenant between the parties, but by virtue of a valid ordinance.

■ It is insisted that one of the plaintiffs, Johnston (the original complainant), by his silence acquiesced in the acts of the defendants, and therefore is estopped, and that the court erred in refusing to permit one of the defendants to testify as to the changes and improvements made on the property during the fifteen days which elapsed between the date of purchase and the date of the filing of the instant suit. The ground of the motion voicing this complaint recites that the witness would have testified that between March 30 and April 15, in addition to the $10,000 paid for the property, large sums of money were spent in improvements on the grounds and house, and in renovating the entire premises; that this work was done openly and in plain view of the public, and of Johnston; and that the first time the defendants had any notice of

any objections from Johnston was on the morning of April 15, at which time he presented this petition for injunction. Counsel cite authorities for the proposition that a party is not entitled to an injunction when with full knowledge of his rights he has been guilty of delay and laches in asserting them, and has negligently allowed large expenditures to be made by another party on whom great injury would be inflicted by the grant of the injunction. The rule referred to is a salutary one, and when applicable should be enforced. If the testimony of the witness had been admitted, however, it would not have established the premise on which the rule rests. It was insufficient to show laches. The property was purchased on March 30. The instant suit was filed on April 15. A period of fifteen days intervened. While in such a case length of time may not ordinarily, in all cases, be the determining factor as to whether a complainant by his continued silence will be held to have acquiesced in the violation by another of a right due him, yet a defendant who, contrary to the terms of a city zoning ordinance, undertakes to put to a use forbidden thereby a property acquired by him does not show such acquiescence as will estop the complainant, who seeks an injunction within fifteen days after the defendant acquired his property; it not appearing at what time thereafter the complainant first discovered that the defendant was expending large sums of money in furtherance of his purpose. If the defendant knew, or was presumed to know, that the property purchased by him could not, under the existing ordinance of the city, be put to the use intended by him, and that Johnston had a right to seek the processes of the courts in aid of the enforcement of the ordinance, then his merely standing by and failing to object while the improvements are being made was not sufficient to estop him. The principle ruled in *McNabb* v. *Houser*, 171 *Ga.* 744 (156 S. E. 595, 74 A. L. R. 1122), applies here: "In cases of silence there must be not only the right but the duty to speak, before a failure to do so can estop the owner; and where the owner merely stands by and fails to object while the improvements are being constructed, he is not estopped from obtaining relief in equity against the diversion of the water, where the expenditure is made with notice, actual or constructive, of his superior rights." The defendants were charged with constructive notice of such rights as the plaintiffs had.

■ The zoning ordinance, noticed more in detail hereinafter, creates what may be termed a restricted area in certain sections of the city. One of these, in which the properties of the plaintiffs and the defendants are located, contains a prohibition as to the use of certain buildings "within four hundred feet of either side of the portions of the avenues and streets of the City of Macon," thereinafter mentioned, one of which is Vineville Avenue. The steps and a small portion of one end of the portico of the building lately acquired by the defendants, the intended use of which as a funeral home is enjoined by the decree entered in the instant case, is within four hundred feet of Vineville Avenue, if the distance be measured from that edge of the sidewalk nearest to the building. If the measurement be taken from the curbing of the sidewalk where it borders that part of the street intended for vehicular traffic, all of the building, including the steps and the portico are slightly more than four hundred feet from Vineville Avenue. If the sidewalk be treated as a part of the street or avenue within the meaning of the ordinance, then a small portion of the structure is within the forbidden distance. It is insisted by counsel for the defendants that the charter of the City of Macon differentiates between streets and sidewalks. It is true that in certain portions of the charter, in the same section, streets and sidewalks are mentioned separately, as for instance in section 74 (Ga. L. 1927, p. 1283), where it is declared in part that "All streets, alleys, sidewalks, pavements, and street crossings shall be under the control," etc., and in section 75 the city is given full power to "repave any sidewalk, street, or alley or any portion of such sidewalk, street, or alley," etc. It is equally true, however, that in other portions of the same charter the word "street" could have no other meaning than one which includes the sidewalk. For instance, in section 74 relied on by counsel, the city is given power to grade, macadamize, and pave "the streets and public lanes and alleys of said city;" and in the same section reference is twice made to the right of the city to assess a portion of the cost thereof, in the one case "on the real estate abutting on the street," and in the other "on the real estate according to its frontage on the street or portion of the street so improved." In section 2 of the charter, defining and following the meanderings of its corporate limits, the language, covering five pages and parts of two additional, many times a certain side of a

certain street is mentioned, but never once sidewalk. Vineville Avenue is shown to be a street, and a prominent street, of the City of Macon. There is nothing in the charter and nothing in this record to suggest that when the words "avenue" and "street" were used in the zoning ordinance it was intended thereby to exclude sidewalks. The sidewalk should be considered as a part of the street or avenue. While the adjudicated cases recognize that the word "street" is sometimes employed to denote merely that part of the street which is devoted to vehicular traffic, yet the authorities generally are to the effect that "street" is a generic term, and that ordinarily it embraces sidewalks, or the entire width of the public way. See the decisions cited in 40 Words and Phrases, 276 et seq. Also see *Hancock* v. *Rush,* 181 *Ga.* 587 (183 S. E. 554).

■ The structure on the lot purchased by the defendants contains a handsome edifice built and used for many years as a residence. The city purchased it in 1938 for the use of the National Guard as an armory. More recently it had been used by certain units of the Home Guard as headquarters. At the time of its sale to the defendants, the supply company of the National Guard had some of its property stored there, and the State Guard was meeting there. This was not a business use. Counsel for the defendants argue that since the ordinance forbids the construction of any building for any purpose or use other than homes, apartment-houses or churches, it by its own terms thereby defines any building which is not being used for one of these three purposes as being used for business purposes. Suppose in this restricted area there should be a building erected years ago and used as a grammar school by the public educational authorities. Judged by the yardstick which counsel would employ, that school building, under the zoning ordinance, would be used for a business purpose, because it was not used as a home, apartment-house or church. Suppose further, that in that area there was a dwelling used as district headquarters for the State Highway patrol; and one that had been loaned to the Red Cross for its activities. When so occupied, would it be contended that these were used for business purposes?

The first rule laid down in our Code as to what shall govern in the construction of statutory enactments is that, with certain exceptions not here involved, "The ordinary signification shall be applied to all words." § 102-102. No reason occurs to us why

a different rule should apply to municipal ordinances. The occupancy of the building as headquarters for military units, as an armory, and as a place to keep equipment belonging to one or more of the units, did not make its use a business one or as property used for a "business purpose" as that term is used in the zoning ordinance. In Grosse *v.* Saunders, 262 Mich. 451 (247 N. W. 912), will be found this definition of an armory: "In its strict sense an armory is a building where arms, ammunition, and instruments of war are stored, but in connection therewith it has been the custom to maintain grounds for drilling purposes and target practice. Such grounds are as much a part of the armory as the building itself. Together they constitute a military establishment." Ordinarily we would not think of an armory as being used for business purposes. It is granted that the word "business" and the phrase "business use" may have different meanings in different statutes, ordinances, and other writings. A reference to 5 Words and Phrases, 970 et seq., together with cases cited in the 1943 cumulative part, will demonstrate that the generally accepted meanings of the word "business" and "business use" necessarily imply employment of one or more persons for the purpose of earning a livelihood, activities of persons to improve their economic conditions and desires, and generally relate to commercial and industrial engagements. In a certain sense the mother of several children may be said to devote a considerable part of her time to the business of rearing future citizens of the State. In that sense the Justices of this court when engaged in the performance of their duties are engaged in the business of the State. Our examination of many · cases on this question, contained in 3 McQuillin on Municipal Corporations (2d ed.), and those cited in Words and Phrases referred to above, satisfy us that ordinarily the word "business" is that which occupies the time, attention, and labor of men for the purpose of a livelihood or profit; and that the use of a building erected for a residence, but later occupied as an armory, could not be termed a "business use" within the meaning of the ordinance.

■ The pertinent portions of the zoning ordinance are set forth in the preceding statement of facts. It is summarized in the headnote, in so far as it throws light upon the issue next to be determined. It was authorized by the constitutional amendment rati-

fied in 1928 (Ga. L. 1927, p. 129), and the act approved February 10, 1939 (Ga. L. 1939, p. 1140). The validity and force of the same ordinance was recognized by this court in *Schofield* v. *Bishop*, 192 *Ga.* 732 (16 S. E. 2d, 714). Under it, without giving effect to the subsequent action of the mayor and council on the subject, the plaintiffs were entitled to the relief which they sought and obtained, because: (a) They were in position to complain of a violation of the ordinance; (b) they need not show any special damage; (c) none of the plaintiffs were estopped; (e) the evidence demanded a finding that the premises in front of the building acquired by the defendants for use as a funeral home would be used by them in its operation, and that these premises were within 400 feet of Vineville Avenue; (f) that a part of the building itself was within 400 feet; (g) that the building had not theretofore been used for a business purpose; and (h) at the time the suit was filed the defendants were repairing and remodeling the building preparatory to using it for a funeral home or mortuary, which was a substantially different purpose from that for which the premises were used originally, or at any former time.

If the resolution of the mayor and council of May 24, 1943, had the effect claimed for it by counsel for the defendants, it was error to direct the verdict against them. There is no room to doubt the purpose of the resolution. The mayor and council desired to relieve the defendants from the prohibition contained in the zoning ordinance. They had sold the defendants this property at a profit to the city. The defendants at the time were considering another location. The mayor and council knew, before they ordered the sale made, the use to which the defendants intended to put the property. The mayor, two of the aldermen, and other city officials gave assurance to the defendants, at the time the negotiations for the sale were in progress, that there was nothing in the zoning ordinance which would prevent them from operating a funeral home at this location. The city engineer had so lowered the curb on one of the sidewalks as to permit a more convenient entrance to the property. The city building inspector had given a permit to make repairs and alterations. The city clerk, upon the payment of a prescribed fee, had issued to them a license to conduct a funeral home at this location. The mayor and council knew of the large expenditures of money the defendants had made preparatory

to opening their business. As honorable men, the city fathers wished to make good their word. There is no evidence or any suggestion that they intended to deceive the defendants, or any that the defendants acted other than in the utmost good faith. But all these considerations are beside the mark if under the law the ordinance did prevent the defendants from using this property as a mortuary, and if the action of the mayor and council on May 25, 1943, was abortive in so far as it sought to relieve the defendants of the burdens the zoning ordinance put upon them.

The resolution relied on undertakes, first, to approve the change of use of the building and premises purchased by the defendants to a mortuary or funeral home. That the resolution describes the building as an armory and warehouse does not alter the fact that the only two uses to which the edifice was ever put were, (1) a residence for many years, that being the purpose for which it was built, and (2) afterwards occupied by certain State military units as headquarters and an armory. That as incidental to this use they kept there certain property, presumably military equipment, did not give it the character of a warehouse in whole or in part, or convert it into a building used for business purposes. The question here involved is as to the validity of that part of the resolution which undertakes to give approval to a change in the use of the building to that of a mortuary, in view of the existing zoning ordinance. The zoning ordinance, after declaring in effect that in a designated district which embraces this property it shall be unlawful to construct any building on either side of Vineville Avenue "for any purpose or use other than homes, apartment-houses or churches," and adding that "The restrictive features of this ordinance shall apply not only to the construction of buildings within the area defined but as well also to the premises upon which the same are or are to be located," and a further statement that the ordinance should not "prohibit the owner from making ordinary repairs, alterations, or improvements to or upon any structure already located within said area," nor "prohibit the continued use of any such structure or premises for any business of substantially the same character as that for which it is already used," next contains this proviso: "Provided that no existing building within said area shall be replaced or substantially altered or used for a substantially different business purpose; nor shall any premises within the same

area be used for any substantially different business purpose, except upon the approval first obtained of the Mayor and Council of the City of Macon, or of such committee or agency of said body as may be delegated the authority to give such approval in its behalf. Such approval shall be given only when the proposed replacement, alterations, or change of use will not in the discretion of the Mayor and Council of the City of Macon, or committee or agency, defeat the general purposes of this ordinance."

A proper construction of the language of the proviso is aided, we think, by bearing in mind that it immediately follows the sentence referred to above, which in express terms declares that nothing contained in the ordinance shall prohibit the owner from making ordinary repairs, alterations, and improvements, nor prohibit the continued use of such structure or premises for any business of substantially the same character as that for which it is already used. The approval referred to in the proviso relates only to the use of a building or premises theretofore used for one business purpose to be used for another business purpose. It does not give the governing authorities of the city the right to approve the use for business purposes of a structure and premises not theretofore used for business. The changes which the defendants were making were not ordinary repairs, alterations, or improvements. They were remodeling it; that is, converting a residential structure into a building suitable for a funeral home; converting certain rooms and a hall into a chapel. Nor were they to use the structure or premises for any business of substantially the same character as that for which it is or was already used. Therefore it must be held that the resolution of the mayor and council was ineffective if based on the proviso contained in the zoning ordinance.

■ Even if the resolution of the mayor and council be treated as an ordinance adopted in due form, the case would be no better for the defendants. If the city authorities did not act on the assumption that they were proceeding under the terms of the proviso heretofore quoted, as the resolution on its face seems to indicate, then they were in reality seeking so to amend the zoning ordinance theretofore adopted as to single out one particular building and lot within the restricted area, and to exempt it alone from the prohibitory provisions of the general zoning ordinance. In so doing the mayor and council were acting beyond their powers.

The constitutional amendment which alone authorized legislation on this subject gave to the General Assembly the right to authorize the governing authorities of certain cities, Macon among the number, "to pass zoning and planning laws whereby such cities may be zoned or districted for various uses and other or different uses prohibited therein, and regulating the use for which the said zones or districts may be set apart, and regulating the plans for development and improvement of real estate therein." The legislature's grant of this power to the City of Macon was in the exact language next above quoted. Code, § 2-1825; Ga. L. 1939, p. 1140.

Any municipal ordinance that is unreasonable will be held void. See *Great Atlantic & Pacific Tea Co.* v. *Columbus,* 189 *Ga.* 458, 466 (6 S. E. 2d, 320), and cit. One of the questions passed on by this court in *Schofield* v. *Bishop,* supra, was whether or not the original ordinance of the City of Macon was unreasonable and arbitrary. This is true also of the case dealing with a like ordinance of the City of Savannah. *Howden* v. *Savannah,* 172 *Ga.* 833 (159 S. E. 401). In both of these decisions it was recognized that in order to be valid the zoning ordinance must not be unreasonable nor arbitrary. Addressing ourselves directly now to the resolution under which the defendants seek refuge, and treating it as an amendment of a valid zoning ordinance, is the amended ordinance, within the meaning of the law, unreasonable and arbitrary, in that it lifts out of the area, otherwise restricted to residences, apartment-houses, and churches, one particular house and lot? We adjudge that it is, and are supported by the following authorities: Huebner *v.* Philadelphia Savings Fund Society, 127 Pa. Super. 28 (192 Atl. 139); Guaranty Construction Co. *v.* Bloomfield, 11 N. J. Misc. 613 (168 Atl. 34); Linden M. E. Church *v.* Linden, 113 N. J. L. 188 (173 Atl. 593); Sugar *v.* North Baltimore Methodist Protestant Church, 164 Md. 487 (165 Atl. 703). In the Huebner case headnote 8 is as follows: "The action of the city council in creating a separate commercial zone of an isolated area comprising a single corner lot, in order to permit a funeral parlor to be conducted thereon, held invalid as unreasonable, discriminatory, and in violation of the zoning authority enacted under authority of legislative act." The instant case differs on its facts from Gorieb *v.* Fox, 274 U. S. 603 (47 Sup. Ct. 675, 71 L. ed. 1228, 53 A. L. R. 1210). There the language of the original zoning ordinance

expressly authorized the city council to make exceptions, and to permit the erection of buildings closer to the street. The reservation there made covered the situation with which the court was dealing. The reservation in the ordinance here involved did not cover the case presented by this record. Nor is the position of counsel for the defendants sustained by the ruling in *McCord* v. *Ed Bond & Condon Co.*, 175 *Ga.* 667 (165 S. E. 590, 86 A. L. R. 703). That case involved a zoning ordinance of the City of Atlanta. The act which permitted it, and the ordinance itself, each contained a broad reservation permitting the zoning authorities to authorize a change in the use; and the reservation did not limit the authorities in this respect, as did the Macon ordinance, to approving a change from one business use to another. The court was correct in disallowing an amendment to the answer which set up the action of the mayor and council which undertook to exempt the property of the defendants from the operation of the zoning ordinance.

■ It logically follows that no error is shown in the grounds of the motion complaining of the exclusion from evidence of the resolution above referred to, or in the rulings excluding evidence as to the permits issued by the city engineer and the building inspector, and the license issued by the clerk. Neither of these nor all of them combined by these acts could alter the legal effect of the zoning ordinance, nor take away rights accruing thereunder, nor remove the burdens and prohibition contained therein. These same observations apply to that ground of the motion where complaint is made of the refusal to permit the mayor, the city engineer, and certain aldermen to testify that before the purchase of the property the defendants went to each of them and inquired about the zoning ordinance, and were advised by each of them that there was nothing therein to prevent the operation of a funeral home at this place, and that the mayor so stated in open council meeting. This testimony would have tended to prove the good faith of the defendants, but it could have illustrated no issue in the case, which must be decided by measuring what the defendants were permitted to do with this property under the zoning ordinance of the city, and what they were forbidden to do. The question of good faith or bad faith can not aid in the interpretation of the meaning of the ordinance, nor can the construction put upon it by these witnesses, officials of

the city though they be, alter its meaning, nor can any representation by them as to the distance between the building and the street bind these plaintiffs. Nothing contrary to what is here decided was ruled in *Georgia Penitentiary Co.* v. *Nelms,* 65 *Ga.* 67.

■ Other grounds of the motion complain of the admission of certain evidence over the objection of the defendants. None of it bore on the question whether the use of the property should be enjoined because of its being located within four hundred feet of a street in an area in the city that was restricted by the zoning ordinance; and therefore it need not be ruled whether or not the evidence should have been excluded, because even if erroneously admitted it could not have affected the results, and the ruling, if error at all, was harmless.

■ That part of the petitioners' case in which it was sought to enjoin the use of the building and premises on the ground that there would be a violation of the zoning ordinance unless an injunction issued was proved by uncontradictory testimony. The evidence demanded the verdict. There was no error in overruling the motion for new trial.

The opinion as now delivered deals with the case on rehearing, a motion for rehearing having been granted after original consideration and judgment of affirmance. In the motion for rehearing it is suggested that the effect of the decree is to enjoin the use of property by far the larger portion of which is situated beyond the zoned area, when by slight alterations in the building and abandonment of certain driveways and approaches the defendants' entire establishment could be freed from the restrictions of the zoning ordinance. A sufficient answer to this is that the plaintiffs in their petition sought to enjoin use of the property as a whole, and the defendants countered with the insistence that they were entitled to use it as a whole; the issue as now suggested not having been raised by the record as here presented.

*Judgment affirmed. All the Justices concur.*