GRAHAM *et al. v.* PHINIZY *et al.*

No. 16434. JANUARY 10, 1949.

*Hammond, Kennedy & Sanders,* for plaintiffs.

*John F. Hardin, Cumming, Nixon & Eve,* and *Fulcher & Fulcher,* for defendants.

WYATT, Justice. ■ Counsel for the defendants in error have filed a motion to dismiss the writ of error upon the ground that, "by reason of the plaintiffs in error having presented an amendment to their petition subsequent to the announcement of the court that the general demurrers of the defendants had been sustained, they did by that action submit to the ruling of the court on the general demurrers and thereby they became estopped to except to that ruling as error." Counsel, in support of their motion, cite and rely on *Walton* v. *Sikes,* 165 *Ga.* 422 (5) (141 S. E. 188); *Rivers* v. *Key,* 189 *Ga.* 832 (7 S. E. 2d, 732); *Farrer* v. *Edwards,* 144 *Ga.* 553 (87 S. E. 777); *Massell Realty Co.* v. *Washburn,* 35 *Ga. App.* 707 (134 S. E. 798). The first case cited merely held that, after a demurrer to an answer had been overruled, except in one particular, and the defendant had amended the answer to meet the particular objection urged, the defendant, having amended, could not be heard to complain that the amendment was not actually necessary. The other three cases relied on by counsel for the defendants in error involved conditional orders providing for the dismissal of a petition on general demurrer unless the petition was amended within a specified time. In each instance, after such an order, the plaintiff amended the petition; and in each case the court held that, having submitted to and acquiesced in the order by seeking to amend, the plaintiff waived the right to except to the ruling which required the plaintiff to amend. In none of these cases did the court hold that the petitioner was precluded, after amendment, from excepting to a final order sustaining a general demurrer to the petition as amended. On the contrary, it appears in the *Washburn* case, supra, that the court first ruled that "the plaintiff having submitted to the adverse ruling on the demurrer by seeking to amend his petition so as to conform to that ruling,

he can not thereafter be heard to complain that the ruling was erroneous, and that the amendment which he chose to offer was in fact unnecessary; and this is true although he may have excepted to the ruling"; and, after having held that the exception to the order which required the petitioner to amend could not be considered, the court proceeded to consider the exception to the order sustaining a general demurrer to the petition as amended, and held that the petition as amended set forth a cause of action and that the trial court erred in sustaining a general demurrer to the petition.

. Thus it will be seen that, by seeking to amend, a plaintiff in no way waives his right to except to a final judgment sustaining a general demurrer to the petition.

"All parties, whether plaintiffs or defendants, in the superior or other courts, whether at law or in equity, may at any stage of the cause, as matter of right, amend their pleadings in all respects, whether in matter of form or of substance, provided there is enough in the pleadings to amend by." Code, § 81-1301. Applying this law, this court in *Freeman* v. *Brown*, 115 *Ga.* 23 (41 S. E. 385), held: "Although upon hearing a demurrer the court 'decided to sustain the same and dismiss plaintiff's petition, and dictated his decision to the court stenographer,' and then discharged the jury that had been empaneled to try the case and 'took up another case,' yet if, 'before the court stenographer completed transcribing the judgment of the court and before the court signed the same,' an amendment to the petition was offered by the plaintiff, such amendment should not have been disallowed upon the ground that it was offered too late." See also *Swilley* v. *Hooker*, 126 *Ga.* 353 (55 S. E. 31); *Lytle* v. *DeVaughn*, 81 *Ga.* 226 (7 S. E. 281). Accordingly, an amendment is not too late if tendered before a final judgment on demurrer is actually signed by the court.

The defendants in error urge that, since the court actually signed the order sustaining the demurrer before the order allowing the amendment was signed, the court was without jurisdiction, it being contended: "The signing of the order by the court then and thereupon terminated the case. It was dismissed. There was no longer any case then to which an amendment could apply until and unless the ruling of the judge was reversed by the ap-

pellate court." With this contention we can not agree. While it appears that the court actually signed the order sustaining the demurrers before signing the order allowing the amendment, the entire procedure was part of one transaction; and it clearly appears from the notation of the trial judge that the amendment was presented, and was before the court, prior to the signing of the order on the demurrers. Accordingly, the signing of the two orders, being part of one contemporaneous transaction, the order sustaining the general demurrer "to plaintiffs' petition as amended" must be considered as an order sustaining the general demurrers after the allowance of the final amendment.

The present case is almost identical on its facts with the case of *Moore* v. *Bryan*, 52 *Ga. App.* 272 (183 S. E. 117), the only material distinction between the two cases being that in the *Bryan* case the proffered amendment was disallowed by the court, and here it was allowed. In the *Bryan* case it appears that an amendment was tendered before a judgment sustaining a general demurrer was signed, and after the judgment was signed the amendment was disallowed. It was contended that the amendment "came too late . . after the case was dismissed on general demurrer, leaving the court without jurisdiction to pass on the amendment." The court declined to sustain the motion to dismiss and held that the trial court should have allowed the amendment.

The final amendment was within time and must be considered as allowed at the time the general demurrers were sustained on September 3, 1948. We might note that, irrespective of this ruling, the motion to dismiss the writ of error could not be sustained because the case was still pending after September 3, the final order sustaining general demurrers of two of the defendants not having been entered until September 13; and the bill of exceptions assigns error on this latter judgment.

■ Counsel for the defendants in error contend in their brief that the following questions are made by the record: (a) whether a court of equity should grant an injunction when damages alleged to be suffered by the plaintiffs are not specifically alleged or actually impending; (b) whether or not a zoning law can be enforced by injunction under any circumstances unless it is specifically authorized by that law.

The petition in this case alleges that the plaintiffs are residents of the City of Augusta, owning property "within the zoned district where the defendants' property is located," and "which are their residences and which are located in close proximity" to the described property of the defendants; and by amendment the petition specifically alleged the distances between the property of the plaintiffs and the defendants. Some of this property was less than 100 feet from the defendants' property. Under these circumstances, the plaintiffs were unquestionably in a position to apply for an injunction against the construction or use of a building in the zoned district where their property was located, if the construction or use was in violation of a zoning ordinance. As stated in *Snow* v. *Johnston*, 197 *Ga.* 146 (1) (28 S. E. 2d, 270): "A property owner residing in that portion of a municipality in which a zoning ordinance is of force may properly apply for an injunction against the use of an existing structure, and operation of a business within the restricted area, in violation of the ordinance." This court has even held that a petition alleging that the plaintiff's property, "consisting of a house and lot, is located across the street from" the zoned area in which an alleged violation of a zoning ordinance is occurring, is not subject to general demurrer. *Enzor* v. *Askew*, 191 *Ga.* 576 (1) (13 S. E. 2d, 374).

"One who owns residential property within a legally zoned district of a city may seek to enjoin the operation of a business in such area, when the same is forbidden by the terms of a valid zoning ordinance, without showing special damage." *Snow* v. *Johnston*, supra. In *Enzor* v. *Askew*, supra, this court held that a demurrer, upon the ground that no facts were set forth showing "any legal damage which plaintiff would suffer from the erection of such a structure," was properly overruled where the petition alleged that the erection of the proposed building would depreciate the value of the plaintiff's property in such a manner that the amount of her damages could not be ascertained, and hence would be irreparable; that the proposed building would be a source of annoyance and worry, and increase the hazard of traffic accidents, especially for children, and would create in the area an unfavorable influence in which to bring up children.

Under the foregoing rulings, the petition as amended was not subject to the general demurrers because "damages alleged to be suffered by the plaintiffs are not specifically alleged or actually impending."

There is no merit in the contention that a petition seeking to enjoin the violation of a zoning ordinance will not lie unless injunction is specifically permitted by the terms of the zoning ordinance. In *Enzor* v. *Askew,* supra, *Snow* v. *Johnston,* supra, and *Lewenstein* v. *Brown,* 200 *Ga.* 433 (37 S. E. 2d, 332), this court recognized the right of a property owner within a zoned district to seek injunction against the violation of a zoning ordinance within that district. None of these decisions was predicated upon any provision which might be contained in the zoning ordinance under consideration, but, on the contrary, the decisions were based upon the general principle of law that such a property owner may apply for injunction where his property rights are involved and he will suffer injury or damage to his property by reason of a violation of the zoning ordinance.

Nor is there any merit in the contention that the plaintiffs' sole remedy was either a petition to abate a public nuisance, brought in the name of the solicitor-general, or a criminal prosecution under the provisions of the ordinance.

A three-family dwelling house is not a nuisance per se. It might, or might not, became a public nuisance, depending upon its mode of operation. Ordinarily the erection or operation of such a dwelling house would not constitute such a public nuisance as might be abated on application of a solicitor-general, but still, whether a public nuisance or not, such erection or operation, where contrary to a valid zoning ordinance, would give to property owners within the zoned district, whose property was injuriously affected by the violation of the ordinance, a right to enjoin a violation which was adversely affecting their property rights. If the erection or operation of the building should be such as to constitute a public nuisance, still this would not preclude a property owner within the zoned district, suffering special damages to his property rights, from the right of injunctive relief. In such an instance, the property owner has suffered a private injury to his property rights, which is not shared by the public generally coming within the sphere of

operation of the act complained of, and he is entitled to injunctive relief, not on account of public wrong but on account of the private injury. As stated in *O'Brien* v. *Harris*, 105 *Ga.* 732 (31 S. E. 745) : "The doctrine is too well established to require any lengthy discussion, that equity never interferes at the instance of the individual citizen or person in matters merely criminal, or merely immoral, which do not affect any right to property. . . A court of equity, under some circumstances, will, at the instance of an individual, restrain an act which amounts to a violation of a criminal law, but the act itself must be of some peculiar injury to the property rights of the party complaining, and the court interferes, not on account of the public wrong, but on account of the private injury."

It is urged that, since the ordinance provided a penalty of $200 per day for each violation, this remedy was adequate and precludes a court of equity from assuming jurisdiction. The penal provision of the ordinance concludes with this language: "This is to be cumulative of all other legal remedies for the enforcement of this ordinance." This language clearly shows that there was no intention to make the penal provision the exclusive remedy for enforcement, but, on the contrary, that it was intended that this remedy should be cumulative only. While it is true that the phrase "legal remedies," and not "legal and equitable remedies," is used, nevertheless only by an unreasonable construction could it be declared that it was intended to exclude equitable relief by injunction. A reasonable construction compels the conclusion that this provision was inserted in order to make it quite clear that the penal provision was intended to be cumulative only.

However, had the ordinance contained no expression whatever as to the penal remedy being cumulative only, the result would be the same. The mere fact that a zoning ordinance might contain a penal provision for its enforcement does not oust a court of equity of jurisdiction in a proper case made by the pleadings. The general rule in this respect is correctly stated in 30 C. J. S., § 53, p. 390: "A court of equity has no criminal jurisdiction and, as a general rule, will take no part in the administration of the criminal law. For the mere vindication of the criminal law and the enforcement of the public policy of the

state, whether founded on moral or other consideration, the legal remedy by indictment and prosecution is fully adequate and peculiarly appropriate. It is well settled, however, that if plaintiff makes out a case where equity would otherwise interfere, aid will not be withheld because the act complained of is a crime as well."

In *Jones* v. *Van Winkle Gin & Machine Works*, 131 *Ga.* 336 (2) (62 S. E. 236, 17 L. R. A. (N. S.) 848, 127 Am. St. R. 235), this court held: "An injunction may issue in a proper case, to restrain persons from attempting, by threats, violence or intimidation, or other unlawful means, to prevent any person from engaging in, remaining in, or performing the business, labor, or duties of any lawful enterprise or occupation, although the acts sought to be restrained, if committed, constitute a crime." The distinction between enforcing a criminal law and protecting property rights by injunction is recognized in *Hasbrouck* v. *Bondurant & McKinnon*, 127 *Ga.* 220 (1) (56 S. E. 241), where this court held: "The general rule is that equity will not interfere with the enforcement of criminal law, nor aid or obstruct the criminal courts in the exercise of their jurisdiction. But this rule does not deprive a court of equity of its power to protect private property, nor defeat its right to enjoin a continuing injury to property or business. When equity acts in such instances, it ignores the criminal feature and exercises its jurisdiction solely with reference to the effect of the act on the property or business." The allegations of the petition in the instant case make a case of injury to private property, and a mere prosecution under the penal provisions of the ordinance in question would not afford to the injured parties as adequate a remedy as will the equitable relief of injunction. Consequently, the fact that the act complained of might constitute a crime presents no valid reason for denying the complainants equitable relief.

The ordinance in question does not give to the commissioner of buildings, or others, any authority to vary the uses within a zoned district so as to authorize the conversion of a one-family dwelling into a three-family dwelling in a U1 district. If the permit referred to in the petition authorized such reconstruction, it was void. If, on the other hand, it was a valid permit, which did not authorize such reconstruction, and the owners undertook

under the permit to perform work not authorized and in violation of the ordinance, the valid permit would afford no reason for refusing to enjoin a violation of the ordinance. The petition set forth a cause of action as against the defendant owners of the property involved, and the trial court erred in sustaining the general demurrers of these defendants.

■ The trial court did not err in sustaining the general demurrers interposed by other defendants. The petition alleged only that the defendant Walter had issued a construction permit to a contractor, and that this permit was negligently and carelessly issued and was void. It was not alleged whether the permit, as issued, authorized the type of construction sought to be enjoined, or whether it was merely a permit to do repair work upon the premises, and such as might have been entirely legal. No copy of the permit was attached to or incorporated in the petition. If it were a void permit, no rights accrued thereunder to the permittee, and an injunction would lie against a violation of the ordinance although such violation might be under the guise of the void permit, and it would be unnecessary to set the permit aside. On the other hand, if the permit was entirely legal, the permit offers no obstacle to enjoining illegal acts not authorized by the permit.

The allegations of the petition being entirely insufficient to show the issuance of a void permit, no case for injunction or other relief is made against the defendants Walter and City Council of Augusta. Moreover, as to these defendants it appears that the act complained of, that is, the issuance of a permit, has been consummated. Injunction will not be granted to restrain acts already completed. *Shurley* v. *Black*, 156 *Ga.* 684 (2) (119 S. E. 618).

*Judgment affirmed in part, and reversed in part. All the Justices concur.*