**KELLOG et al.**

v.

**JOINT COUNCIL OF WOMEN'S AUXILIARIES WELFARE ASS'N.**

No. 43604.

Supreme Court of Missouri.

Division No. 1.

March 8, 1954.

Jerome F. Duggan, Sidney W. Horwitz, St. Louis, (Dubinsky & Duggan, St. Louis, of counsel), for appellant.

Shifrin, Shifrin & Agatstein, St. Louis, for respondents.

VAN OSDOL, Commissioner.

In this action, plaintiffs, property owners, sought to enjoin defendant's use of its property at 4341 Westminister Place in St. Louis as a home for convalescent and aged women, it being alleged by plaintiffs that such use is in violation of the comprehensive zoning ordinance of St. Louis. Defendant raised the issue that the zoning ordinance, in its application to defendant's property, is unreasonable, arbitrary, discriminatory, confiscatory and in violation of the due process clause of the Fourteenth Amendment of the Constitution of the United States. The trial court granted an injunctive order and decree, and defendant has appealed.

The 4300 and 4400 blocks on Westminister Place in St. Louis extend east and west. The properties in the blocks are bounded on the east by Boyle Avenue and on the west by Taylor Avenue. The properties extend northwardly to an alley parallel with Olive Street which is to the northward thereof; and extend southwardly to an alley parallel with McPherson Avenue which is to the southward. It was conceded or shown in evidence that plaintiffs, as pleaded, own and reside in properties in the same (4300) block contiguous to, or on the same side of, or across the street from the property of defendant, or in the adjoining block (4400) to the westward. Defendant's property, situate at 4341 Westminister Place, is a large three-story brick building on the north side of the street. Defendant bought the property January 6, 1950.

There are fifty-four houses in the 4300 and 4400 blocks. All are large with twelve to eighteen rooms. All (including defendant's) were constructed as single-family residences. All are well maintained. Most of these houses were built a little after the turn of the century. More recently, some have been extensively remodeled.

By the original comprehensive zoning ordinance (Ordinance No. 35003) of the City of St. Louis, approved April 26, 1926, five use districts in St. Louis were established —(1) residence, (2) multiple dwelling, (3) commercial, (4) industrial, and (5) unrestricted. The constitutionality of the original zoning Ordinance No. 35003, in its general scope, was ruled in State ex rel. Oliver Cadillac Co. v. Christopher, 317 Mo. 1179, 298 S.W. 720.

By the original zoning Ordinance No. 35003, the property in the 4300 and 4400 blocks on Westminister was classified and zoned in the "multiple dwelling" district. But, by Ordinance No. 36797, approved April 11, 1928, the original Ordinance was amended to change, rezone, restrict or reclassify the property in the described blocks to the "residence" use district— "single-family" dwellings. The change in classification of properties in blocks 4300 and 4400 by the amending Ordinance 36797, supra, was held constitutional in Taylor v. Schlemmer, 353 Mo. 687, 183 S.W.2d 913. Reference may be made to the statements of the facts by this court in the Taylor case and in Landau v. Levin, 358 Mo. 77, 213 S.W.2d 483, for information relating to the uses of properties on Olive Street and on Taylor, McPherson and Boyle Avenues in the neighborhood of the 4300 and 4400 blocks, Westminister Place, at the time the Taylor and Landau cases were tried and decided. In the instant case there was evidence that the "surrounding neighborhood" has "changed some" in the last ten years, but no "particular change" has been noticed in the use of properties in the 4300 and 4400 blocks on Westminister.

By Section 4 of Ordinance No. 45309, approved April 25, 1950, the City of St. Louis is now divided into zoning districts, eleven in number, including " 'A'—Single Family Dwelling District," and " 'B'—Two-Family Dwelling District." A building in a "B" district may be used for a purpose among others—Philanthropic Institutions which render no service or other activity customarily carried on as a business. Paragraph 6, Section 8, Ordinance No. 45309. The use of the properties in 4300 and 4400 blocks, Westminister Place, continue to be classified as within the boundaries of the

"A" district (Single-Family Dwelling) as indicated by the District Map approved and made a part of the Ordinance 45309. A single-family dwelling is defined as a "building designed for or occupied by one family." Paragraph 11, Section 3, Ordinance No. 45309. A "family" is defined as a "group of persons immediately related by blood, marriage, or adoption living together as a single housekeeping unit; also a group of not more than five (5) persons not necessarily related by blood or marriage living together as a single housekeeping unit." Paragraph 15, Section 3, Ordinance No. 45309.

Defendant, a corporation chartered by pro forma decree in 1931, now operates two homes for convalescent and aged women, one at 4362 Olive Street and the other (in the property involved herein) at 4341 Westminister Place. These two homes are kept in very good condition. The home located on Olive is "almost directly to the rear" of 4341 Westminister Place; "women from forty to sixty are invited to come live there." The home at 4341 Westminister has thirteen very large rooms, and a large ball room. There is no sign on the property indicating its use. The twenty-one women presently occupying this home are from sixty-five to ninety years of age. Twenty are "paying guests." They pay about forty dollars per month for room and board. Most of the guests receive financial assistance from the State. There are two resident matrons. Defendant was "hoping" to house thirty-eight women "if we could have used the ball room." The guests "have room and board, three meals a day, and whatever nursing care they can receive from three matrons, a cook and a janitor, and assistance from the other women."

Defendant's use of its property at 4341 Westminister is undoubtedly in a charitable and beneficent purpose; and, although the defendant knew the property was within a district classified by the zoning ordinance for single-family dwellings, defendant has instituted and continued the stated use of the property—"We were going on the presumption the City would go along with me."

August 25, 1950, defendant had filed an application with the Board of Public Service of St. Louis requesting a permit to use its building at 4341 Westminister Place as a convalescent home for aged women. Such permission was denied, February 20, 1951, for the reasons, among others, of hazardous stairs, inadequate elevator, unsatisfactory use of yard, inadequate plumbing facilities on and inconvenience of the third floor for the stated use by defendant.

Defendant-appellant initially contends that, although it was alleged by plaintiffs that the use of defendant's property in violation of the zoning ordinance will irreparably damage plaintiffs' or their property, there was no evidence actually introduced tending to show that plaintiffs or their property suffer or will suffer special injury because of the alleged violation. In urging this contention defendant-appellant cites Shelton v. Lentz, 191 Mo.App. 699, 178 S.W. 243, and relies on the general rule that equity will not interfere to restrain the violation of a municipal ordinance at the instance of a citizen who suffers no special or peculiar injury (from the act sought to be restrained) different from that suffered by any other citizen.

In our case, plaintiffs did not actually introduce evidence tending to show their properties are or will be rendered less desirable for residential use or are or will be depreciated in value because of defendant's use as did the plaintiffs allege and show in Evans v. Roth, 356 Mo. 237, 201 S.W.2d 357. Depreciation of value peculiarly effected to a plaintiff's property, of course, is considered as a special damage different to that of the general public. Evans v. Roth, supra. But we think it should not be held that a showing of depreciation of value or of any special pecuniary damage is essential to the maintenance of this action by plaintiffs or that depreciation of value of their property is the only special damage which the plaintiffs herein may suffer. It was shown in evidence that plaintiffs are owners and residents of property in a district zoned for use as "single-family" dwellings. Plaintiffs have an interest in the continuation

and observance of the single-family dwelling classification of the zoned district in which they reside and own property, and it would seem they should be entitled to resort to this equitable remedy to enjoin the violation of the zoning legislation and the regulations enacted and promulgated by the zoning authority in invoking the police power with whatever resultant benefit to them or to their properties. In our opinion, they are proper party-plaintiffs and may maintain this action to prevent by injunction the violation of the zoning ordinance, by which violation their interest and benefit in some measure may be destroyed. Polk v. Axton, 306 Ky. 498, 208 S.W.2d 497 and cases therein cited; Welton v. 40 East Oak St. Bldg. Corp., 7 Cir., 70 F.2d 377, and cases cited in footnote 2 at page 380; Snow v. Johnston, 197 Ga. 146, 28 S.E.2d 270; Vol. 2, Yokley, Zoning Law and Practice, § 192, pp. 7–12. As said in the Welton case [70 F.2d 381], "There can be no doubt but that appellants (respondents in our case) suffered a damage different from that suffered by the public. Their damage might well be called special, even though material financial loss was not involved."

■ It is particularly the duty of a City in enacting a zoning ordinance to say in what district a particular area of the City should be placed, and, although the reasonableness of a City's classification is doubtful or even fairly debatable, the judgment of a court may not be substituted for the judgment of the City as to the propriety and reasonableness of the classification. Whether the classification is reasonable and constitutional, or whether it is unreasonable, arbitrary and discriminatory and therefore unconstitutional depends upon a careful examination of the facts and circumstances of each case. A court will not disturb legislative or administrative action in zoning unless beyond reasonable doubt the action is an abuse of discretion or an excess of power, having no substantial relation to the evils to be remedied or to the public health, safety, and welfare or other proper object of the police power. Flora Realty & Investment Co. v. City of Ladue, 362 Mo. 1025, 246 S.W.2d 771; Landau v.

Levin, supra, and the cases of other jurisdictions therein cited, particularly the leading case of Village of Euclid, Ohio, v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303; Schell v. Kansas City, Missouri, 360 Mo. 27, 226 S.W.2d 718; City of St. Louis v. Friedman, 358 Mo. 681, 216 S.W.2d 475; City of Richmond Heights v. Richmond Heights Memorial Post Benevolent Ass'n, 358 Mo. 70, 213 S.W.2d 479; Taylor v. Schlemmer, supra; State ex rel. Oliver Cadillac Co. v. Christopher, supra; Geneva Inv. Co. v. City of St. Louis, 8 Cir., 87 F.2d 83; Smith, Law and Practice of Zoning, § 58, pp. 83–84; Vol. 8, McQuillin, The Law of Municipal Corporations, 3d Ed., § 25.279, pp. 529–532.

■ This court has twice considered, and upheld the constitutionality of the zoning classification of the use of properties as "single-family" dwellings, in the application of such zoning classification to certain described properties in the 4400 block on Westminister. See again Landau v. Levin, supra; and Taylor v. Schlemmer, supra. In the Landau case defendant's property was situate at 4487 Westminister Place. Defendant, a physician, lived and had his office in the house at that location, and rented office space therein to eleven other physicians. In the Taylor case defendants' property was located at 4421 Westminister. It was conceded that the property of the defendants in that case was used as a multiple dwelling. We conclude from the shown facts of the instant case that this court's reasoning in the Landau and Taylor cases is quite as applicable to defendant's building in the 4300 block which property now is admittedly used as a home for twenty-one (or more) persons, several more than the number of persons, five, as limited in the definition of a family where such persons may not necessarily be related. Paragraph 15, Section 3, Ordinance No. 45309, supra. Defendant's building, constructed as a single-residence building in an area originally improved by the erection of single-residence buildings, maintained and used as such for approximately half a century, is not substantially different (in its structural adaptability for use or in its setting in the

area for approximately a quarter of a century and presently zoned for single-family dwellings or in its location with relation to other areas zoned for other uses) from the buildings at 4487 and 4421 Westminister involved in the Landau and Taylor cases. Generally it could not be said there is no rational foundation for zoning classifications of land as residential and the restriction of a too intensive use of parcels of land. This is "predicated upon the sound philosophy that such a restriction is well aimed toward the prevention of congestion and resulting injury to the public safety and health." Metzenbaum, The Law of Zoning, p. 293; Flora Realty & Investment Co. v. City of Ladue, supra; Landau v. Levin, supra; Taylor v. Schlemmer, supra; Village of Euclid, Ohio, v. Ambler Realty Co., supra. We particularly stress the shown fact of the "multiple" occupancy of defendant's property as now used in the area zoned by the City for single families as defined. We believe the factual bases for the reasonableness of the application of the zoning ordinance to the use of defendant's property are not materially different from those noted in the Landau and Taylor cases. The Landau and Taylor cases, we believe, were correctly decided, and should govern our decision of the constitutional issue in the instant case.

Defendant-appellant has relied upon the cases of Women's Kansas City St. Andrew Society v. Kansas City, 8 Cir., 58 F.2d 593; Village of University Heights v. Cleveland Jewish Orphans' Home, 6 Cir., 20 F.2d 743, 54 A.L.R. 1008; and City of Richmond Heights v. Richmond Heights Memorial Post Benevolent Ass'n, supra. As pointed out in the Landau case, the reviewing U. S. Circuit Court of Appeals in the Kansas City case had considered the twelve aged persons (who were to use the property involved in that case) as a "family," and the house was consequently to be used as a residence of a family thus maintaining that character of use of the property as provided in Kansas City's zoning ordinance. And the Kansas City property was structurally adequate and appropriate to house the persons so considered as a family. Moreover, under the Kansas City zoning ordinance, persons (including old ladies) of like or greater number could have used the house as "commercial" roomers, so the denial of the charitable use of the house as a home for aged women constituted a discrimination as to its use as a charitable "old ladies' home." Similarly, in the Village of University Heights case, the use of the "structurally proper" cottages as an orphanage was not unlike other houses in the zoned U–1 district which could have been lawfully used, under the zoning ordinance of the Village, as private residences or schools; and so the basis of a denial of the use of defendant's cottages as an orphanage really narrowed to a discrimination as to their use because of race, creed or nationality. We regard the case of City of Richmond Heights v. Richmond Heights Memorial Post Benevolent Ass'n, supra, as persuasively adverse to defendant-appellant's position.

The trial court's order and decree should be affirmed.

It is so ordered.

LOZIER and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the Court.

All of the Judges concur.