17746

Marian D. AUGHTRY *et al.*, Appellants, v. Gladys M. FARRELL and J. G. Farrell, Respondents

(118 S. E. (2d) 569)

*Messrs. Williams & Henry,* of Greenville, *for Appellants,*

*Frank G. Carpenter, Esq.,* of Greenville, *for Respondents,*

February 14, 1961.

TAYLOR, Justice.

This appeal arises out of an action brought in the County Court for Greenville County, wherein plaintiffs sought injunctive relief against defendants using a portion of the premises, whereon is situated their home, for business purposes.

Plaintiffs own homes in, and live in, an A-1 single-family dwelling residential zone under the ordinances of the City of Greenville and seek to enjoin the defendants from maintaining and operating a laundry and dry cleaning pickup business from a building constructed on a portion of the lot whereon defendants reside in said zoned area, also an order requiring the removal of this building.

By way of answer, defendants set up a general denial, alleged that the Board of Adjustment of the City of Greenville granted a variance on March 28, 1957, for the construction of a laundry and dry cleaning pickup station and that the property on which the building was located was accordingly no longer in the residential zone referred to in the complaint. Further, that they acted in good faith and in reliance upon the variances granted in constructing the building and interposed the defenses of laches and estoppel.

On March 1, 1957, the defendant, Gladys M. Farrell, applied to the Building Commissioner of the City of Greenville for the issuance of a permit to construct the laundry and dry cleaning pickup station on a designated portion of the aforesaid lot. The application was denied by the Commissioner; and, thereafter, on appeal, the Board of Adjustment of the City granted the requested variance on March 28, 1957. A permit was thereafter issued and construction of

the building was commenced. Plaintiffs then resorted to the Courts; and, on October 31, 1957, the Greenville County Court passed an order relative thereto, holding that the Board of Adjustment had no power or authority to grant the variance because due notice had not been given plaintiffs of the application therefor as required under the ordinances. The order granted the defendant, Gladys M. Farrell, permission to reapply to the Board of Adjustment for a variance and to have a hearing thereon, after due notice to Appellants.

Thereafter, timely application was made to the Board of Adjustment for the variance. A hearing was had on the application, after due notice to Appellants, and the variance was granted.

Plaintiffs then made application for a writ of *certiorari* in the Court of Common Pleas for Greenville County, and upon hearing, Judge Brailsford reversed the Board's order, holding that the granted variance was illegal.

Thereafter, the plaintiffs duly applied to the Greenville County Court for the injunctive relief prayed for in their complaint and on March 23, 1960, the Court, by its order denied the relief and ordered the complaint dismissed; and plaintiffs now appeal.

The property under consideration is 180 feet square and located at the corner of Cleveland Avenue and Ben Street in the City of Greenville. It is bounded on the north by a commercial district fronting west on Cleveland Avenue; east by residential lots fronting south on Ben Street and west by Cleveland Avenue. The residence thereon faces south on Ben Street. The laundry and dry cleaning pickup building is on the northwest corner facing Cleveland Avenue near Sirrine Stadium. Judge Brailsford stated in his order:

"At the request of counsel for all parties, I visited the premises and viewed the building and its location. As one passes the ravine, in traveling south on Cleveland Avenue, it is the only non-residential type building in view. The fact

that it is located in the residential district is apparent. My own impression was that it is conspicuous in its isolation and that it is not harmonious with the neighborhood.

"The only reasonable inference from the record is that the Board failed to adhere to the standards and conditions prescribed by the ordinance, in the particulars stated. Its action in granting the variance is, therefore, illegal and must be reversed. This conclusion makes it unnecessary to consider the numerous other grounds of illegality urged by petitioners."

After determining that the Board of Adjustment had failed to adhere to the standards and conditions prescribed by the ordinance and its action in granting the variance was illegal, the order states that the hearing Judge had no occasion to decide whether petitioners had been "specially damaged" within the rule of *Momeier v. John McAlister, Inc.,* 203 S. C. 353, 27 S. E. (2d) 504, and, further, "Whether the facts proved constitute an estoppel against petitioners is not properly before the Court in this proceeding. If the defense exists, it is personal to the applicant and has no place in the amended return of the Board."

There is no appeal from this order, and it is now the law of the case.

In the order of the County Court for Greenville County now under appeal, reference is made to the foregoing order; and the questions before the Court are stated as being whether the petitioner had been specially damaged within the rule set forth in the *Momeier case,* and whether the doctrine of estoppel and laches was applicable to the facts of this case. The Court concludes that plaintiffs are without authority to maintain this action in that they were able to show only general damages and not such special damages as would justify equitable relief, and, further, that plaintiffs are denied relief under the theory of estoppel and laches.

Judge Brailsford found that the laundry and dry cleaning pickup station located in an A-1 residential zone was con-

spicuous in its isolation and not harmonious with the neighborhood and that the only reasonable inference from the record was that the Board had failed to adhere to the standards and conditions prescribed by the ordinance. The testimony shows that plaintiffs' homes are located near the laundry and dry cleaning pickup station and that in the opinion of a number of witnesses the value of their property has been and will be impaired and decreased by the maintaining and operating of such business.

One real estate broker testified that the value of the property in the immediate neighborhood was affected to the extent of "several blocks," a portion of his testimony being:

"A. * * * Now, from real estate value standpoint, uh, when you jump the ravine and make a breach in that residential pattern, uh, not only does it affect where the building is built on the back and the lots immediately adjacent to it, but psychologically, very definitely you create a doubt in the mind of a would-be purchaser of any property, I would think, for several blocks of the stability of the zoning in that area. Recently, within six months before they started, we sold two homes within, I would say, a half a block of there, and I'm confident that both of those people felt that the zoning was stable. In selling a home a lot of times, unknown fears have more weight than known fears and certainly the people have been led to believe that the shopping area from the ravine north is a convenience. A person can walk around the corner and do their shopping, but that it would never jump the ravine. And so, from a value standpoint and as a real estate broker, it would definitely be my opinion that the break in the pattern, by jumping the ravine and allowing a commercial use in a definitely established zoned residential area, not only created a loss of value to a degree which cannot be determined until a home near there is sold, but it would also create doubt in the mind of purchasers of property in two or three blocks because they feel if it was permitted there maybe next year it would be on the other corner and there is no stopping.

That definitely is a factor people have come in the last three or four years to be very conscious of zoning restrictions.

"Q. Do you feel that this building as now constructed and standing there detracts from the general appearance of the residential area?

"A. Yes, sir. I do."

Plaintiffs' witnesses, eleven in number, substantially corroborated the above and this testimony is uncontradicted.

In *Kellog et al. v. Joint Council of Women's Auxiliaries Welfare Ass'n, Mo.,* 265 S. W. (2d) 374, 376, the question was somewhat similar to that in instant case in that plaintiffs sought to enjoin the operation of a convalescent women's home in a district zoned for single-family residential use, and the Court stated:

"* * * plaintiffs did not actually introduce evidence tending to show their properties are or will be rendered less desirable for residential use or are or will be depreciated in value because of defendant's use as did the plaintiffs allege and show in *Evans v. Roth,* 356 Mo. 237, 201 S. W. (2d) 357. Depreciation of value peculiarly effected to a plaintiff's property, of course, is considered as a special damage different to that of the general public. *Evans v. Roth, supra.* But we think it should not be held that a showing of depreciation of value or of any special pecuniary damage is essential to the maintenance of this action by plaintiffs or that depreciation of value of their property is the only special damage which the plaintiffs herein may suffer. It was shown in evidence that plaintiffs are owners and residents of property in a district zoned for use as 'single-family' dwellings. Plaintiffs have an interest in the continuation and observance of the single-family dwelling classification of the zoned district in which they reside and own property, and it would seem they should be entitled to resort to this equitable remedy to enjoin the violation of the zoning * * * authority in invoking the police power with whatever resultant benefit to them or to their properties. In our opinion, they are

proper party-plaintiffs and may maintain this action to prevent by injunction the violation of the zoning ordinance, by which violation their interest and benefit in some measure may be destroyed. *Polk v. Axton,* 306 Ky. 498, 208 S. W. (2d) 497 and cases therein cited; *Welton v. 40 East Oak St. Bldg. Corp.,* 7 Cir., 70 F. (2d) 377, and cases cited in footnote 2 at page 380; *Snow v. Johnston,* 197 Ga. 146, 28 S. E. (2d) 270; Vol. 2, Yokley, Zoning Law and Practice, § 192, pp. 7-12."

In *Momeier v. John McAlister, Inc., supra,* this Court stated:

"I have a very different view of the testimony, which I have carefully read more than once, relating to the factual issues, from that expressed by Mr. Justice Baker when he says that appellants' testimony at least balanced that of the respondent. I fully concur in the findings of fact of the Circuit Judge; in fact I have no doubt that the preponderance of the evidence was with the respondent and that in addition to the interuptions suffered by him and the members of his family in the usual enjoyment of their home, due to the business activities of the appellants next door, there has been a material impairment in the money value of respondent's property for residential purposes, and there is no testimony that it is of any value for any other purpose. And this depreciation in value is enough alone to constitute respondent a 'specially damaged plaintiff.' " [203 S. C. 353, 27 S. E. (2d) 511].

Considering the evidence in the light of the foregoing, we find that the plaintiffs have shown by the undisputed evidence that those who live within the immediate vicinity will suffer a material impairment in the money value of their property if defendants are permitted to maintain and operate the laundry and dry cleaning pickup station in question, that their damages are not such as are suffered by the public generally but such damages are peculiar to those in the immediate vicinity and they are, therefore, "specially damaged plaintiffs."

Defendants contend further that plaintiffs are precluded from relief under the theory of estoppel and laches. Defendants, on March 28, 1957, applied for and were granted a variance by the Board of Adjustment of the City of Greenville and the building permit issued. This was contested in the Courts and the variance set aside for lack of proper notice. Thereafter, defendants reapplied and were again granted a variance by the Board. The matter was again carried to the Courts where, after hearing, the second variance was set aside for the reason that the Board had exceeded its authority. Defendants, therefore, knew from the beginning that they were seeking to construct a building and maintain a business in an A-1 residential zone. It is undisputed that at the time the foundation of the building was being laid, one of the neighbors complained. Others testified that being of the impression that the building was a garage, they made no immediate protests but did so immediately when the form and shape revealed that it was not to be a garage. Mr. J. A. Henry, an attorney, wrote defendants on June 4, 1957, protesting and on July 16, 1957, action was commenced. Upon filing of the order of October 31, 1957, wherein the second variance was declared void, plaintiffs applied to the Court upon the entire record for the injunctive relief sought in the action commenced back in July of that year. It is, therefore, apparent that defendants were aware that their efforts to break the zone boundary were being opposed both by word of mouth of the neighbors who complained personally and by action in the Courts.

Defendants contend that everything done by them shows that they were acting in good faith, as evidenced by the fact that when the first variance was set aside by the Courts they stopped construction immediately and did nothing further until they had obtained another variance from the Board of Adjustment. We find no evidence of bad faith on the part of any of the parties; but inasmuch as both variances have been declared invalid, defendants now find themselves in the position of having constructed the building and main-

taining a place of business in an area zoned for A-1 single-family dwellings, which is in violation of the ordinances of the City of Greenville and, therefore, illegal.

For the foregoing reasons, we are of opinion that plaintiffs have been specially damaged, that under the undisputed facts of this case they have been reasonably diligent in voicing their protests and are not guilty of such laches as would preclude them from maintaining this action, that the order appealed from should be reversed and plaintiffs granted the relief sought; and it is so ordered. Reversed.

LEGGE and MOSS, JJ., concur.

STUKES, C. J., and OXNER, J., did not participate.