## SOUTH GEORGIA POWER CO. *et al. v.* BAUMANN *et al.*

650

No. 7051.  DECEMBER 16, 1929.  REHEARING DENIED JANUARY 20, 1930.

*Lawrence & Abrahams, William Story, Elsie H. Griner,* and *Fulwood & Forrester,* for plaintiffs in error.

*Jon. P. Knight, A. D. Tucker,* and *Slater & Moore,* contra.

RUSSELL, C. J.  The City of Nashville, Georgia, operated its municipally owned electric-light system until March 23, 1928, when the mayor and council passed a resolution authorizing the sale of this property.  The city had both a water and light system, and sold the light system, reserving the water system with a stipulation that the purchasers of the electric-power system should furnish the power to pump the water from the municipal well to supply the water system.  On March 23, 1928, the mayor and council by resolution granted a franchise to Roger C. Baumann and Ray C. Burrus (who were the purchasers of the light system) for a period of twenty years.  The consideration to be paid by the purchasers was $52,000, of which $33,500 was paid in cash, the purchasers assuming the unpaid balance due on certain engines and boilers to Foos and Company, and a portion of the purchase-price being reserved to await remedying certain defects in the title to the real estate conveyed by the city upon which the elec-

tric-light plant was located. One of the material agreements of the purchasers, Baumann and Burrus, was that of executing a bond in the sum of $10,000 for the purpose of indemnifying the city should they fail to furnish adequate current or otherwise default in their obligation to the city in supplying adequate light facilities. Upon the ground that the purchasers failed and refused to give the bond required by the terms of their purchase, and that they had failed to improve and properly maintain the electric-light system or to give adequate service in accordance with the provisions of their contract, the mayor of Nashville entered into negotiations with the South Georgia Power Company, and on January 17, 1929, revoked the franchise which had been granted to Baumann and Burrus, and granted a franchise to the South Georgia Power Company. On January 24, 1929, Baumann and Burrus and the Southeast Georgia Power Company filed a petition for injunction against the South Georgia Power Company and the City of Nashville. Demurrers and answers were filed by the South Georgia Power Company and the City of Nashville. The court overruled the demurrers, and granted an interlocutory injunction restraining the power company and the city from taking any steps to carry out the contract entered into on January 17, 1929. The power company was enjoined from bringing any material into the city of Nashville or installing any poles,.and the city was restrained from interfering in any manner with the operation of the light system by Baumann and Burrus in behalf of the Southeast Georgia Power Company. The demurrers were predicated upon the following grounds: (1) That the petition sets forth no facts authorizing the relief prayed. (2) That there is no equity in the petition. (3) That petitioners are undertaking, without authority of law, to interfere with the legislative powers of a municipal corporation, and the exercise of such legislative powers can not be enjoined. Exception is taken to the grant of the injunction, and to overruling of the demurrers.

Four questions are raised by the record in this case: (1) Did the City of Nashville have the power or authority to grant a franchise to the South Georgia Power Company after having already granted a franchise for twenty years to R. C. Baumann and Ray C. Burrus on March 23, 1928? (2) Is the ordinance of January 17, 1929, void because it was passed at a special meeting of council and was not read twice in accordance with the provisions

of an ordinance contained in the City Code of Nashville, which was adopted in 1919? (3) Is the ordinance granting a franchise to the South Georgia Power Company void because of fraud and collusion between the company and the mayor of the City of Nashville, as contended in the petition for injunction? (4) Is the proposed action of the City of Nashville in entering the contract with the South Georgia Power Company and granting it a franchise for the transmission of electricity within that municipality arbitrary and unreasonable?

■ At the hearing much evidence was introduced; and the testimony with reference to the Southeast Georgia Power Company's compliance with its contract, its failure to perform its obligations, and the insufficiency of service afforded by it, was in such conflict that the judge would have been authorized, in the exercise of his discretion, to find as he did, that there was not a failure on the part of the petitioners to give bond or refusal to do so, or any undue delay in paying the balance of the purchase-money amounting to about $12,000; for there was evidence that the requirement as to the bond had been practically waived, and that the former mayor, Mr. Peeples, had stated to Mr. Baumann that it would be perfectly acceptable to the city if the payment of the balance of the purchase-money was deferred until February 1. However, in the consideration of this case it seems clear that the grant or refusal of the injunction is dependent upon purely legal principles, aside from and independent of the ordinary rule that the exercise of the judge's discretion in the grant or refusal of an interlocutory injunction upon conflicting evidence will not be interfered with unless manifestly abused. The injunction sought and granted in the present instance is one which interferes with the action of the legislative body of the municipality of Nashville, a subordinate division of government of this State. The rule is well settled that the courts are very cautious to interfere with the action of legislative bodies. As said in *Mayor &c. of Gainesville* v. *Dunlap,* 147 *Ga.* 344 (6) (94 S. E. 247), "A court of equity will not interfere with the discretionary action of the governing officers of a city within the sphere of their legally delegated powers, unless such action is arbitrary, and amounts to an abuse of discretion." In *McMaster* v. *Waynesboro,* 122 *Ga.* 231 (5) (50 S. E. 122); this court held that "The business affairs of a municipality are com-

mitted to the corporate authorities, and the courts will not inter-
fere except in a clear case of mismanagement or fraud." In *Clein*
v. *Atlanta*, 164 *Ga.* 529 (139 S. E. 46, 53 A. L. R. 933), this court
held: "A combination of individuals, to procure the passage and
enforcement of a municipal ordinance which is not ultra vires, un-
constitutional, unreasonable, or void for any reason, does not
render such ordinance invalid, although their purpose in procuring
its enactment and its enforcement is to drive their competitors
out of business, and to thus swell their profits. . . The courts
can not inquire into the motives of the mayor and general council
of Atlanta in enacting this ordinance, and can not set the same
aside if it is not unreasonable, ultra vires, or unconstitutional."
See also 14 R. C. L. 433, 437; N., C. & St. L. Ry. v. White, 278
U. S. 456 (49 Sup. Ct. 189); *City of Atlanta* v. *Stein,* 111 *Ga.*
789 (36 S. E. 932, 51 L. R. A. 335); Zahn v. Board, 274 U. S.
325, 328 (47 Sup. Ct. 594); *Stonecypher* v. *Putnam Mills &c.*
*Co.,* 151 *Ga.* 12 (105 S. E. 482). As appears from the record, the
franchise granted to Baumann and Burrus was not an exclusive
franchise. The ordinance of April 27 merely granted the appli-
cants a right to operate a light and power system in the City of
Nashville with the necessary poles, lines, etc., but did not under-
take to create a monopoly or to grant an exclusive franchise.
Speaking for myself only, an attempt to grant an exclusive fran-
chise by a municipal corporation would be abortive even though its
charter contained such authority, for the reason that such grant
would create a monopoly which is prohibited by the constitution.
Art. 4, sec. 2, par. 4 (Code of 1910, § 6466). Section 6 of the
franchise granted to Baumann and Burrus and their assigns by the
City of Nashville on April 27, 1928, expressly reserved to the
city the right to declare the ordinance and franchise inoperative,
void, and of no effect. "That the grantees shall indemnify the
City of Nashville for the faithful performance of the provisions of
this franchise from year to year, by the filing with the mayor and
council, or with any person authorized by said mayor and council.
to receive the same, of a bond with some acceptable surety com-
pany, to be approved by the mayor and council, conditioned for the
faithful performance of the terms of the franchise, in the sum
of $10,000, the same to include the maintenance of the rate scale in
this ordinance set forth, unless and until the same shall have been

changed with consent of both of the parties hereto. The first bond provided for herein shall be filed within sixty days from the passage and approval of this ordinance and adoption of this franchise, and subsequent bonds to be filed at the expiration of the first bond and succeeding bonds. The omission or failure to furnish the bond provided for herein shall and does authorize the mayor and council of the City of Nashville, in their discretion, after notice to the holder of this franchise, to declare this ordinance and franchise inoperative, void and of no effect." It appears from the minutes of the meeting of the mayor and council held on January 17, 1929, that Baumann and Burrus failed and refused to furnish the indemnity and file the bond required by the sixth section of the ordinance granting the franchise, and that due notice had been given to them of their failure to furnish such indemnity. So it does not appear from the record that Baumann and Burrus had an exclusive franchise which was not subject to revocation.

■ But it is strenuously insisted that the ordinance is void because it was passed at a special called meeting of council and not read twice as required by the provisions of an ordinance contained in the Code of the City of Nashville, passed in 1919, as well as an ordinance passed in 1915, prescribing a rule for the passage of ordinances. Rules of procedure passed by one legislative body are not binding upon subsequent legislative bodies operating within the same jurisdiction. No legislative body can divest its successor of its legislative powers by passing ordinances or resolutions which deprive their successor of the power to exercise fully their legislative discretion. Each legislative body when it meets, and unless restrained by the authority which created it, is without rules of procedure and has inherent power to make its own rules without reference to the action of preceding bodies. Where a city council resolves that the rules of the prior council be adopted until a committee reports rules, the prior rules cease to be in force on the report of the committee. Armatage v. Fisher, 74 Hun, 167 (26 N. Y. Supp. 364). Although the rules of a prior council, temporarily adopted until new rules can be reported by a committee, provide that they can not be amended except by a two-thirds vote, the new rules, when reported, can be adopted by a majority vote. Armatage v. Fisher, supra. The only province of the courts is

to inquire whether charter provisions have been followed. Charter provisions are structural, and the courts have a right to inquire whether they have been complied with. Parliamentary rules are merely procedural, and with their observance the courts have no concern. They may be waived or disregarded by the legislative body. "While municipal governing bodies usually adopt or recognize parliamentary law as their rules of order and proceeding, courts ordinarily will not annul or invalidate an ordinance enacted. in disregard of parliamentary rule, provided the enactment is made in the manner required by statute. The rules of parliamentary practice are merely procedural, and not substantive." 43 C. J. 527, § 813. The rule above referred to is adhered to in the Federal House of Representatives. "The power of each House of Representatives to make its own rules may not be impaired or controlled by the rules of a preceding House." Jefferson's Manual, I, 187, 210; V, 6002, 6743-6747. "Mere failure to conform to parliamentary usage will not invalidate the action when the requisite number of members have agreed to a particular measure. So the council may abolish, modify or waive its own rules. But of course, it can not disregard mandatory charter provisions. Hence, where an ordinance is enacted in compliance with the charter, it will not be held void because in its passage one of the parliamentary rules of the council was violated." McQuillin on Municipal Corporations, 1332. See also St. Louis &c. R. Co. v. Gill, 54 Ark. 101 (15 S. W. 18, 11 L. R. A. 452); Note to 40 L. R. A. (N. S.) 29; 25 R. C. L. 876. So we are of the opinion that the grant of the franchise by the mayor and council to the South Georgia Power Company can not be held to be void, as insisted, because it was granted at a called meeting and because the ordinance was not read a second time before its passage, since it appears from the minutes that it was unanimously passed, receiving the entire vote of the council. It is true that in this case four members of the council say that they did not intend to vote for the ordinance and thought it was to come up for a second reading and passage at a subsequent meeting. However, it is well settled that a corporation can only speak through its minutes; and it appears from the proceedings as recorded that the ordinance was not read for information, as contended, but was put upon its passage and each and every member of the council voted for its adoption.

■ It is claimed that the ordinance is void because of fraud and collusion between the South Georgia Power Company and the mayor of the City of Nashville. The only charge of fraud contained in the petition is in paragraph 24, as follows: "It is averred that the entire action of the mayor and council was counselled by W. G. Eager, the consulting engineer of the defendant South Georgia Power Company, and was the result of a collusive attempt by the said W. G. Eager, acting for the said South Georgia Power Company, and J. B. Luke, as the mayor of the City of Nashville, to injure and damage plaintiffs and destroy their property, and is a fraud upon them." As appears from the undisputed evidence of Mr. Luke, the mayor, he, being dissatisfied with the service the plaintiffs were rendering, sought Mr. W. G. Eager of the South Georgia Power Company and asked his assistance. Eager came to Nashville at a unanimous request of the members of the council. The meeting resulted in the passage of the ordinance by which a franchise was granted to the South Georgia Power Company. There is no suggestion in the evidence that the mayor or any councilman received any personal benefit from the passage of the ordinance. There is no single element of fraud shown. There may have been the same motive as that dealt with in *Clein* v. *Atlanta,* supra, in which Mr. Justice Hines said: "It is strenuously urged by counsel for the plaintiffs that the individual defendants pressed and procured the passage of this ordinance with sinister and evil motives. They assert that the purpose of the defendants was to stifle competition, and to drive plaintiffs and other auctioneers out of the business of auctioneering jewelry and allied articles. It is further alleged that these defendants formed an association to accomplish these selfish purposes, and that they overawed the mayor and general council of the City of Atlanta and forced this body, in fear of the power exerted by it, to pass this ordinance. The courts can not inquire into the motive of the defendants in pressing and procuring the enactment of this ordinance, or of the mayor and general council of Atlanta in enacting the same; nor can they set the same aside, if it is not arbitrary and unreasonable, is not ultra vires, or is not unconstitutional. *Puckett* v. *Young,* 112 *Ga.* 578, 582 (37 S. E. 880) ; People *v.* Gibbs, [186 Mich. 127, 152 N. W. 1053, Ann. Cas. 1917B, 830] ; Gardner *v.* Bluffton, 173 Ind. 454 (90 N. E. 898, Ann. Cas. 1912A, 713) ; 7 McQuillin, Municipal

Corporations, § 732." It is very apparent that the reference to fraud in paragraph 24 of the petition is a mere conclusion of the pleader, for no facts are stated which would raise an inference of fraud.

■ It is also contended that the ordinance granting a franchise to the South Georgia Power Company is unreasonable. Since, as already pointed out, the mayor and council of the City of Nashville reserved the right of revoking the franchise granted to Baumann and Burrus in the event they failed to give the indemnity bond, this would seem to be a sufficient answer to that contention. However, in the opinion of the writer, and under the provisions of the charter of the City of Nashville, by which the General Assembly granted to that municipality the right to grant franchises for public utilities of various kinds, it does not appear that the power of granting franchises is or should be restricted to merely one operator of any public utility. The grant of a franchise to the Southeast Georgia Power Company, inasmuch as Baumann and Burrus had already purchased the existing property previously owned by the city, may, upon a proper showing, and upon the final hearing of the case, be permitted to continue its operations with such customers as desire to avail themselves of its utilities, and the South Georgia Power Company may do likewise, thus giving the citizens of the municipality what is always desirable in everyday affairs of life and in the procurement of every necessity—competition, which means freedom from monopoly. The grant to the South Georgia Power Company is not an exclusive franchise; it simply permits it to enter Nashville and use the streets of that municipality under municipal regulation and superintendence, and at a fixed schedule of maximum rates, to supply electricity for purposes of light and power. The same is true of the franchise granted previously to Baumann and Burrus, except that their privilege is limited to 20 years. The question as to whether the council properly revoked the franchise granted to Baumann and Burrus is not now before us. The question is whether the mayor and council had the right to grant the franchise to the South Georgia Power Company. The action now proceeding is to restrain the South Georgia Power Company from entering the business of furnishing light and power by electricity to the citizens of Nashville and vicinity. This we hold the mayor and council of the

658

City of Nashville had power under the charter to grant. Indeed, to prevent monopoly it would be the duty of the municipality to encourage competition. It will be time enough, should the South Georgia Power Company see fit at any time to demand an exclusive franchise, to then determine the effect of the resolution of the mayor and council asserting a revocation of the franchise, and to adjudge the question whether the revocation of the franchise would not in fact be depriving Baumann and Burrus of the property they purchased from the City of Nashville without due process of law. All we hold at this time is that the court erred in overruling the demurrers to the petition, and in granting the injunction prayed for; in consequence of which the judgment of the trial court must be *Reversed. All the Justices concur.*

GILBERT, J., concurs in the judgment of reversal.