20706, 20707. VULCAN MATERIALS CO. *v.* GRIFFITH; and *vice versa.*

ARGUED NOVEMBER 10, 1959—DECIDED MARCH 15, 1960—
REHEARING DENIED MARCH 30, 1960.

*Wm. B. Spann, Jr., Daniel B. Hodgson, Alston, Sibley, Miller &*
*Shackelford,* for plaintiff in error.
*William F. Lozier, Poole, Pearce & Hall, Harold Sheats,* contra.

Duckworth, Chief Justice. ■ Repeatedly this court has rendered judgments in cases concerning zoning matters. Some of our decisions in such cases are: *McCord* v. *Bond & Condon Co.,* 175 *Ga.* 667 (165 S. E. 590, 86 A. L. R. 703) ; *Schofield* v. *Bishop,* 192 *Ga.* 732 (16 S. E. 2d 714) ; *Snow* v. *Johnston,* 197 *Ga.* 146 (28 S. E. 2d 270) ; *Lewenstein* v. *Brown,* 200 *Ga.* 433 (37 S. E. 2d 332) ; *Morgan* v. *Thomas,* 207 *Ga.* 660 (63 S. E. 2d 659) ; *Birdsey* v. *Wesleyan College,* 211 *Ga.* 583 (87 S. E. 2d 378) ; and *Neal* v. *City of Atlanta,* 212 *Ga.* 687 (94 S. E. 2d 867). A casual reading of the opinions in these cases reveals at once an absence of complete judicial comprehension of the problems at hand. This is easily understandable when it is recognized that lawyers and judges of this State before the dawn of constitutional consent to zoning of private property had become saturated with the fact that the Constitution respected and held inviolate private property and insured equal protection of the owner in the use of such property. But the people by their votes amended or changed this constitutional guardianship of private property, and in the process stripped their judiciary of power to protect it, as had theretofore been the case. By the constitutional change the people voluntarily subjected their property to the unlimited control and regulation of legislative departments. The Constitution (Code § 2-1923) now provides: "The General Assembly of the State shall have authority to grant the governing authorities of the municipalities and counties authority to pass zoning and planning laws whereby such cities or counties may be zoned or districted for various uses and other or different uses prohibited therein, and regulating the use for which said zones or districts may be set apart, and regulating the plans for development and improvements on real estate therein." Pursuant to this constitutional authority, Georgia Laws 1939, p. 584 (applicable to Fulton County), and Georgia Laws 1952, p. 2689 (applicable to counties having a population of 300,000 or more) were enacted. These acts conferred upon county governing authorities all the powers the Constitution authorized. Section 24 of the 1939 act and section 25 of the 1952 act, in identical terms, provide that the county governing authorities are "clothed with all of the authority which the General Assembly can grant to such authorities . . . under the laws of the State of Georgia." In defining zones and districts and

the uses therein, the General Assembly conferred equally unlimited power to those mentioned in the Constitution. They vested in the county authorities the power to zone property without limitation as to the number or size of such zones, and without limitation as to the uses allowed or prohibited; and without specification as to the procedure, other than a resolution, notice, and a hearing, to be followed in zoning or the time when such zoning should become effective. In section 8 of the 1939 act and section 8 of the act of 1952, the county authorities are empowered to zone property without regard to the action of the planning commissions. The 1939 act, which applies to Fulton County alone, provides in section 9 that the county authorities may on their own motion proceed to modify or amend such zoning or planning resolution as may have been established and make such modifications or amendments as they may see fit. Such limitless powers are simply beyond judicial review. There can be no judicial limitation placed upon the broad terms "as they may see fit." Section 11 of the 1939 act provides that the Board of Commissioners of Roads and Revenues of Fulton County, Georgia, may in the interest of "public health, safety, order, convenience, comfort, prosperity or the general welfare of the community, adopt by resolution a plan or plans for the districting and/or zoning of the territory and land in Fulton County, Georgia (outside of incorporated areas). . . The county may be divided into such number of zones or districts and such districts may be of such shape and area as the county authorities may deem best suited to attain the purpose of the zoning regulations. Such county authorities may go into congested areas and prescribe zoning regulations for any part of or all of such congested areas and *they are to be the judges* of where such congested areas may be and the extent and limitations thereof." (Italics ours.) The foregoing quotation from section 11 shows the unlimited powers conferred upon the county commissioners. It expressly empowers them to "be the judges" as to where congested areas are and the extent to which they will regulate them.

It would seem that the foregoing quotations from the Constitution and the statutes demonstrate plainly that the county commissioners have complete freedom to create any number of zones and districts and of such size and shape as they may arbitrarily

choose. This means that they have the authority to create zones or districts of any size, whether 10 feet square or any number of acres in any conceivable shape. The utter impossibility of bringing the terms and conditions of such legislative powers to judicial decisions perhaps explains why the county authorities are required to give persons to be affected by proposed zonings an opportunity to be heard. The kind of hearing is not prescribed, and irrespective of what is shown at such hearings, the authorities are given absolute power to proceed as they choose in total disregard of what such hearings reveal.

When the act plainly empowers the county authorities to amend or to modify existing zones, and prescribes no particular instrumentality by which such amendments or modifications must be effectuated, the courts are given no power to prescribed the instrumentalities or to condemn any procedures by which the authorized result is accomplished. This means that it is idle for a court to attempt to distinguish between such terms as *spot zoning* and *special use permits*. They accomplish precisely the same result, to wit, to zone the property involved to another use. Such tract alone, irrespective of its size or shape, constitutes a zone or district which both the Constitution and statutes empower the county commissioners to establish. Indeed both the Constitution and the statutes authorize what this court has called spot zoning. The courts must refuse to interfere with the legislative acts of zoning because the courts are given neither chart nor compass by which to adjudicate and condemn the actions of the zoning authorities. We therefore conclude that the people must submit to the legislative control of their property, or change the Constitution to afford the courts something to stand upon in protecting private property. We have neither the information, experience nor desire to make public policy in respect to legislative control of the uses of private property.

Reverting to our previous observation that some of the decisions listed at the outset of this opinion appear to be in conflict, we call attention to the fact that *McCord* v. *Bond & Condon Co.*, 175 *Ga.* 667, supra, has the concurrence of all the Justices, and being older than *Snow* v. *Johnston*, 197 *Ga.* 146, supra, *Birdsey* v. *Wesleyan College*, 211 *Ga.* 583, supra, and *Neal* v. *City of Atlanta*, 212 *Ga.* 687, supra, it must be followed in case of conflicts.

There a single tract was lifted from an area zoned to another and different use. While the decision held valid the creation of a Board of Zoning Appeals, and then held that, since the use of the particular tract had been fixed in conformity with the power conferred upon that board, it nevertheless and of necessity approved such zoning and the refusal of the trial court to interfere therewith. So long as the decision in the *McCord* case stands, this court can not disapprove zoning because it is spot zoning or done by special use permit.

We believe the resolution by the county commissioners here involved is both wise and clearly within the powers conferred upon them by the General Assembly. It enumerates certain uses, including that of removing natural resources, which is the use here involved, and provides that they may later be allowed by the commissioners within the area zoned to agricultural uses upon a finding by the commissioners that such uses are necessary and should be allowed. Thus it is seen that this rezoning was done pursuant to the zoning resolution, and, in effect, the land involved was thereby zoned and is a separate zone since such zone or district is precisely what both the Constitution and statutes authorize.

We therefore hold that the action of the commissioners in thus fixing the uses for this single particular tract is valid and authorizes putting said land to such uses. Furthermore, the alleged processing of the minerals removed from the soil on the premises is within the uses allowed. It follows from what has been ruled above that neither count II nor count III alleges grounds for the relief prayed, and it was not error for the lower court to sustain the demurrers thereto.

■ But zoning to authorize a use of property which is entirely lawful does not entitle the user to escape liability for damage to persons or property resulting from such use. Count I of the petition as amended alleges that the walls of petitioner's home were cracked by the blasting carried on in the mining authorized. It further alleges that the petitioner and his family were forced to live in unsanitary conditions, injurious to their health, caused by the dust, smells, and fumes pervading his home and making it almost uninhabitable. While as a general rule one is not liable in damages for the natural results from a lawful, proper, and

non-negligent use of his property (*Thrasher* v. *City of Atlanta*, 178 *Ga.* 514, 173 S. E. 817; *Gordon County Broadcasting Co.* v. *Chitwood*, 211 *Ga.* 544, 87 S. E. 2d 78; *Newman* v. *Sessions*, 215 *Ga.* 54, 108 S. E. 2d 870), yet where, as here, such uses put in motion conditions that go upon the lands of another and there damage his health or property, such injured person is entitled to relief in equity to abate or terminate such injuries which are alleged to be irreparable and continuous. *Poultryland, Inc.* v. *Anderson*, 200 *Ga.* 549 (37 S. E. 2d 785); *Delta Air Corp.* v. *Kersey*, 193 *Ga.* 862 (20 S. E. 2d 245, 140 A. L. R. 1352); *Roughton* v. *Thiele Kaolin Co.*, 209 *Ga.* 577 (74 S. E. 2d 844). It follows that count I alleges a cause of action, and it was not error to overrule the general demurrers thereto.

■ The ruling in headnote 3 as to certain special demurrers requires no further elaboration.

*Judgment affirmed in part and reversed in part on the main bill of exceptions and affirmed on the cross-bill of exceptions. All the Justices concur, except Head, P. J., who dissents from headnote 1 and division 1 of the opinion, and the judgment of affirmance on the cross-bill of exceptions.*

HEAD, Presiding Justice, dissenting. The act of 1939, entitled "Fulton Planning Commission Created" (Ga. L. 1939, p. 584), contains 26 sections. The act of 1952, entitled "Zoning in Certain Counties" (Ga. L. 1952, p. 2689), contains 28 sections. An examination of the two acts reveals that the first 22 sections of the two acts are practically identical, the exception being that in section 17 of the 1952 act the words "or the board of adjustment" are added immediately following the words, "Every decision of the board of zoning appeals, . . ." Section 23 of the 1952 act is new, and fixes the compensation of the planning commission and the board of zoning appeals. Section 24 of the 1952 act conforms with section 23 of the 1939 act, and section 24 of the 1939 act is carried forward as section 25 of the 1952 act. Section 26 of the 1952 act contains the only substantial new matter that is not incorporated in the 1939 act. Section 26 of the 1952 act provides that, should the largest municipality in the county form a municipal planning board and board of adjustment as authorized by the act of 1946 (Ga. L. 1946, p. 191), then and in that event, the municipal planning board and board of adjustment

shall have all of the powers, authority, and duties of the county planning commission and county board of zoning appeals, provided by the 1952 act.

By an act (Ga. L. 1952, p. 2731), approved on the same date as the act applicable to Fulton County (Ga. L. 1952, p. 2689), the City of Atlanta was brought under the provisions of the General Zoning Law, approved January 31, 1946 (Ga. L. 1946, p. 191). Under the terms of the 1952 act applicable to Fulton County, the powers which otherwise would have been vested in a county board of zoning appeals passed to a board of adjustment as authorized and provided by the general law of 1946. It is provided in paragraph 2 of section 10 of the 1946 act that the board of adjustment has power: "To authorize upon appeal in specific cases" such variances from the zoning regulations as will not be contrary to the public interest.

Nowhere in any of the acts cited is any authority granted to the Commissioners of Roads and Revenues of Fulton County to grant a variance by "special permit" from the zoning regulations. All power to grant variances being in a board of adjustment and not in the commissioners, the commissioners cannot exercise a power that is vested by legislative enactment elsewhere. It matters not that the legislation producing the existing result may be devious in language or difficult of ascertainment so long as, as here, the legislative intent may be ascertained. I therefore dissent from the rulings in division one of the opinion.