40766. ROGERS et al., Trustees v. MAYOR &c. OF THE CITY OF ATLANTA.

Decided June 30, 1964—Rehearing denied July 22, 1964.

*Edenfield, Heyman & Sizemore, Maurice N. Maloof,* for plaintiffs in error.

*Henry L. Bowden, Ralph C. Jenkins,* contra.

EBERHARDT, Judge. ■ There is an attack on the zoning ordinance as being violative of the First Amendment to the Federal Constitution, of the "due process" clauses of both the Fourteenth Amendment and Art. I, Sec. I, Par. III of the Georgia Constitution and of the "equal protection" clause of the Fourteenth Amendment.[2] Generally any zoning ordinance that absolutely excludes churches from a residential area is invalid under one or more of these constitutional guarantees. See Annot. 74 ALR2d 377, §§ 2, 20; 1 Yokley, Zoning Law and Practice, § 30 (1953 Ed., 1962 Supp.). Churches are, however, subject to reasonable regulation, both referring to property in the zone generally and to churches specifically, provided the regulations are reasonable and contain some standards. See Annot. 74 ALR2d 377, §§ 3-14.

Here the zoning ordinance providing for "special use permits" was adopted pursuant to the Act of 1960 allowing them. Ga. L. 1960, p. 3222. Recognition of the power of the General Assembly to grant to the city zoning power is found in *Birdsey v. Wesleyan College,* 211 Ga. 583 (87 SE2d 378), and this extends to the granting of the power to make special exception pro-

---

[2]These people raised essentially the same issues in Galfas v. City of Atlanta, 193 F2d 931 (5th Cir.) but under the doctrine of abstention the constitutionality of the ordinance was left for the State courts.

visions. Tullo v. Township of Millburn, 54 N.J. Super. 483 (149 A2d 620). This ordinance, Article XXI, generally has two provisos: that a report be received from the Atlanta-Fulton County Joint Planning Board and that "such proposed use shall otherwise comply with all of the regulations . . . set forth for the district in which it shall be located." With specific reference to churches, the standard set out for granting a special use permit is: "4. Churches and temples in any dwelling district where it can be shown that its location or planned traffic pattern does not constitute a traffic hazard or create congestion in the streets and where one (1) parking space on the lot is provided for each five (5) seats in the main auditorium."

"[I]t must be said before the ordinance can be declared unconstitutional, that . . . [the standards] are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 395 (47 SC 114, 71 LE 303, 54 ALR 1016). We find the ordinance here provides reasonable standards and is not unconstitutional for any of the reasons urged.

█ In the application of a zoning ordinance the general rule is that the discretion of the zoning authority, whether it be the board of aldermen, the board of adjustment, or some other group,[3] will not be disturbed unless an abuse of that discretion is shown. McCord v. Bond & Condon Co., 175 Ga. 667, 672 (165 SE 590, 86 ALR 703); City of Atlanta v. Awtry & Lowndes Co., 205 Ga. 296 (53 SE2d 358); Ivey, Inc. v. Allen, 105 Ga. App. 728, 731 (125 SE2d 549); 8 McQuillin, Municipal Corporations, § 25.278 (3rd Ed.). Regardless of any presumption that may obtain in favor of the validity of administrative zoning actions (but see, Mobley v. City of Thomasville, 97 Ga. App.

[3]"The final choice of the body to discharge the duties pursuant to zoning ordinances and regulations rests with the chosen representatives of the municipality or county; and whether this choice is made under direct constitutional authority alone, or constitutional authority augmented by legislation, is a question that has been determined by the people." Birdsey v. Wesleyan College, 211 Ga. 583, 589 (87 SE2d 378).

855, 862 (5), 104 SE2d 586) and regardless of whether or not the zoning authority must render findings (See, 8 McQuillin, Municipal Corporations, § 25.272, supra), there must be some competent evidence on which the zoning authority can act, else there is an abuse of discretion. *Ivey, Inc. v. Allen,* 105 Ga. App. 728, supra. See, 8 McQuillin, Municipal Corporations, § 25.280, supra.

Did the church application meet the standards set out in Division 1, supra? There is no dispute that the application for the permit was approved as to form by the planning commission, that it otherwise complied with the requirements of buildings in the district (R-5) and that the parking space provision was more than complied with, forty-nine parking places being planned rather than the thirty which would be required. The only possible remaining objective standard is that a traffic hazard or congestion not be created.

The fact that a traffic hazard or congestion might result from the location of a church has been held a valid ground for denying a permit. *Galfas v. Ailor,* 81 Ga. App. 13 (57 SE2d 834). In *Galfas,* which involved this same group of Jehovah's Witnesses in a 1949 attempt to locate a church, there was evidence of the potential traffic hazard and the zoning authority made a finding to that effect. Here we have no finding of a traffic hazard, the application simply having been denied, and, even if there had been a finding, evidence of a traffic hazard appears to be lacking.

On that question, the church group's uncontradicted evidence disclosed that the present membership of this church is one hundred and the maximum attendance at any service is sixty-seven; the policy of Jehovah's Witnesses is to divide a congregation and form a new church when the membership approaches two hundred. The maximum seating capacity of the proposed church is one hundred fifty and this would not be enlarged or expanded. Services are held only three times a week, Sunday afternoon, Tuesday night and Thursday night. Forty-nine off-street parking places are proposed. The maximum number of cars brought by the congregation to their present services in a rented warehouse is twenty-four. The application

for a church use permit was approved by the Traffic Department of the City of Atlanta and, as to traffic, by the city's planning department.

In opposition, an attorney who lived in the neighborhood urged that "the traffic problem which exists here exists in a very aggravated form," stating that the traffic flow on West Wieuca Road exceeds 6,000 cars per twenty-four hour period and that no on-street parking is permitted within the block of the proposed church. He called attention to the fact that there were eight traffic accidents within the block during the prior seven months.

Thus the evidence without dispute shows that location of this church on West Wieuca Road would increase the 6,000 car daily traffic flow by approximately twenty-five cars (or 0.008 percent) no more than three time a week. *De minimus non curat lex.* As was said about similar evidence in State ex rel. Wenatchee Congregation of Jehovah's Witnesses v. City of Wenatchee, 50 Wash.2d 378, 385 (312 P2d 195): "Apparently no systematic traffic check, and certainly no accurate or detailed traffic survey of the area was made by the . . . [zoning authority]. There is no evidence in the record (a) as to the occurrence, time, duration or extent of any periods of heavy traffic in the area, and (b) no evidence that the time of any such periods of heavy traffic would overlap or coincide with the time of any regular church activities. . . The minutes of the board show that in the petitions and at the hearing property owners stated that issuance of the permit would result in traffic congestion and would adversely affect the residential nature of the area. On the basis of the latter proof, such as it is, the respondents contend that the location of appellant's church at the proposed site would materially contribute to severe traffic congestion, particularly since Ninth Street is already allegedly burdened with a heavy flow of traffic from the nearby junior college and also from the family residences located in the vicinity. We do not think there was substantial evidence before the board to support this contention." Here, also, the evidence before the zoning authority was insufficient to show, in the words of the ordinance, "a traffic hazard."

Thus it appears that these applicants have met all of the objective criteria laid down in Article XXI of the ordinance pertaining to special use permits. There remains an objection that the lot was "too small," advanced by both the city planning board and the attorney who appeared in opposition to the application. This lot is 1.09 acres (47,500 square feet) and the church would cover less than 6 percent of this area, or 2,560 square feet (the proposed building is forty feet by sixty-four feet.) Architectural plans and specifications for the building, and plot plans for development of the lot, including location of the building, the landscaping and the use of buffer plantings along the lot lines and the location of off-street parking provisions with entrance and exit provisions from the street, were submitted to the zoning and planning board as well as to the aldermanic committee along with the application and these were available at the public hearings. In view of the fact that the church proposal admittedly conforms to and exceeds the requirements of the R-5 district in which the property was located, we can only view the "too small" reason as a mere unsupported conclusion. Furthermore, an affidavit submitted by one of the attorneys for the applicants shows that he examined all of the applications for special use permits made by churches since inception of the special use permit ordinance and that, of the twenty-six permits granted, thirteen were for churches on lots physically smaller than the lot here. Obviously the objection that the lot was "too small" can have little basis in fact and would appear to be arbitrary and unreasonable.

"[A]rbitrary refusal to grant a license or permit to one group when other groups have obtained permits under similar circumstances constitutes a denial of equal protection of the law." Hornsby v. Allen, 326 F2d 605, 609; Niemotko v. Maryland, 340 U.S. 268 (71 SC 325, 95 LE 267).

■ Another issue raised in the board's answer to the certiorari is that two aldermen had attended two meetings, one of approximately twenty persons and the other of approximately thirty persons, prior to the public hearing before the planning-zoning committee. The answer recites that at these meetings held in the neighborhood of the proposed church location all of those in

attendance were opposed to granting the church application because there was "insufficient land," the church would "create a serious traffic problem," and would "de-value the property of nearby residents." The answer affirmatively shows that none of this transpired at any public hearing before the board of aldermen or its committee and it was not, therefore, before the board as evidence related to these issues. But perhaps further comment is necessary. We have already discussed the "insufficient land" and traffic problem arguments. It has been uniformly held elsewhere that possible adverse effect on property values is not in itself a sufficient ground for refusing to allow a church in a residential zone. See Annot. 74 ALR2d 377, § 5. While we have not found any cases directly dealing with objections from the neighborhood alone as a ground for excluding churches, several ordinances have been invalidated where they required the consent of neighborhood property owners as a ground for approval of a permit. See Annot. 74 ALR2d 377, § 15; Note, 70 Harvard L. Rev. 1428 (1957). None of the reasons advanced at these private meetings, even if they were before the board, could be grounds for denying the application.

■ The city also urges that the aldermanic committee, and subsequently the board of aldermen as a whole in affirming the committee action denying the permit, was an exercise of "legislative discretion," which can not be controlled. Concededly a true exercise of legislative discretion is not to be controlled. For example, when the board of aldermen decides to zone or not to zone, i.e., to adopt or not to adopt a zoning ordinance, it exercises a discretion which is not to be controlled by the courts. See *Toomey v. Norwood Realty Co.*, 211 Ga. 814, 817 (89 SE2d 265). In adopting the ordinance here it could include or omit various standards, so long as, when finally adopted, reasonable standards were provided for the granting of the special use permits. As was pointed out in Hornsby v. Allen, 326 F2d 605, 608 (5th Cir.), "A governmental agency entrusted with the licensing power . . . functions as a legislature when it prescribes standards, but the same agency acts as a judicial body when it makes a determination that a specific applicant has or has not satisfied them." The granting or with-

holding of a special use permit under a zoning ordinance falls in the same category. Here the standards were prescribed, and we conclude they were reasonable. The board of aldermen could exercise no more or less than a legal discretion in making the determination as to whether they had been met, for action otherwise would be arbitrary.

"The public has the right to expect its officers to observe prescribed standards and to make adjudications on the basis of merit . . . absolute and uncontrolled discretion invites abuse." Hornsby v. Allen, 326 F2d 605, 610, supra. Any other conclusion would involve an unreasonable concept of reasonableness.

The applicants having met all of the objective standards of the zoning ordinance pertaining to special use permits, the superior court is directed to sustain their application for certiorari and make a final decision in their behalf. *Code* § 19-501.

*Judgment reversed with direction. Bell, P. J., and Jordan, J., concur.*