24719. BURNHAM v. STATE HIGHWAY DEPARTMENT.

Submitted July 8, 1968—Decided September 23, 1968.

*Twitty & Twitty, Frank S. Twitty,* for appellant.

*Marcus B. Calhoun, Arthur K. Bolton, Attorney General, Richard L. Chambers, John A. Sligh, Jr., Assistant Attorneys General,* for appellee.

Frankum, Justice. The State Highway Department of Georgia brought a proceeding to enjoin Wayne Murphy and Charlie M. Burnham from maintaining contrary to the provisions of the Junkyard Control Act (Ga. L. 1967, p. 433 et seq.) a junkyard within 1,000 feet of the nearest edge of the right of way of a certain federal-aid primary highway located in Colquitt County. Upon the interlocutory hearing it appeared without dispute that the defendant Murphy had sold his interest in the junkyard to the defendant Burnham and no longer had any interest therein. At the conclusion of the hearing the trial judge passed an order enjoining both named defendants from operating the junkyard in question in violation of the law. Only the defendant Burnham appealed. While it does not appear that a formal order dismissing the case as to the defendant Murphy was taken, the appellant and appellee have presented the case to this court as if the defendant Burnham were the only party defendant and we will accordingly so deal with the case in the opinion.

The Georgia General Assembly at its 1966 session proposed an amendment to the Constitution of the State to authorize the General Assembly to enact legislation to control outdoor advertising and to control junkyards and to provide for landscaping and scenic enhancement of areas adjacent to federal-aid primary and interstate highways. This resolution provided in part, and so far as is material to the question here before us, that "The State, acting by and through the State Highway Department of Georgia, shall be . . . authorized to acquire, either by ne-

gotiation or through the exercise of the power of eminent domain upon payment of just and adequate compensation, easements or other interests in land within a distance of 1,000 feet of the nearest edge of the right-of-way line of any State-aid road, which is a part of the Federal Interstate or primary system of highways, for the purpose of requiring the owners of junkyards existing upon such property to remove the same, or to screen them from public view in accordance with regulations which the State Highway Board of Georgia is hereby authorized to make and publish in such respect, which regulations shall conform to and comply with [public law 89-285, 89th Congress, S. 2084, approved October 22, 1965]. . .

"The General Assembly shall have full authority to zone property within a distance of 1,000 feet of the nearest edge of the right-of-way line of any State-aid road, which is also a part of the Federal Interstate system or primary system, for commercial or industrial purposes; and in respect thereto, to also zone such property in respect to the location of advertising signs, displays, or devices; or in respect to the establishment, removal, or control of junkyards; and to provide for rules and regulations governing both advertising and junkyards; all in conformance to and in compliance with the provisions of said public law of the United States Congress." Ga. L. 1966, pp. 1070-1075.

This proposed amendment was submitted to the people along with other proposed amendments of statewide application at the General Election held on Tuesday, November 8, 1966, and was ratified by the voters of the state by a majority of almost two to one. Ga. L. 1967, p. 3693. Thereafter, pursuant to the authority thus conferred upon the General Assembly by the people the legislature passed the "Junkyard Control Act" which law was approved on April 6, 1967. Ga. L. 1967, pp. 433-438. This Act provided in part: "No person shall establish, operate, or maintain a junkyard, any portion of which is within 1,000 feet of the nearest edge of the right of way of any Interstate or Federal-Aid primary highway, except the following: (a) Those which are screened by natural objects, planting, fences, or other appropriate means so as not to be visible from the main traveled way of the systems, or otherwise removed from sight. (b) Those located

within areas which are zoned for industrial use under authority of law. (c) Those located within unzoned industrial areas, which areas shall be determined from actual land uses and defined by regulations to be promulgated by the Director of Georgia State Highway Department. (d) Those which are not visible from the main traveled way of the system."

The Act provides, with respect to existing junkyards, that is, those in existence at the time the Act became effective, that they shall be screened, if feasible, by the Highway Department at locations on the Highway Department right of way or in areas acquired for such purposes outside the right of way so that they shall not be visible from the main traveled way, or that the Highway Department may by purchase, or by condemnation, acquire such junkyards where screening is not feasible and remove the same. Further, with respect to future established junkyards, Section 11 of the Act provides: "Any junkyard which comes into existence after the effective date of this Act and which cannot be made to conform to the Act is declared to be a public and private nuisance and may be forthwith removed, obliterated, or abated by the Director [of the State Highway Department] or his representatives. The Director may collect the cost of such removal, obliteration, or abatement from the person owning or operating such junkyard." By Section 15 of the Act junkyards established contrary to the provisions of the Act are declared to be unlawful and persons so establishing such junkyards are declared to be guilty of a misdemeanor.

After the effective date of the Act, the defendants in this case established in Colquitt County a junkyard or automobile graveyard which had not previously existed, a part of which was located within less than 1,000 feet from the nearest edge of a Federal-aid primary highway. Proceeding under the 1967 Act above referred to, the State Highway Department filed a complaint against the named defendants seeking to enjoin them from continuing to maintain the junkyard in violation of the provisions of the aforesaid Act. Upon the interlocutory hearing the evidence was not in dispute that a part of the junkyard in question was located within less than 1,000 feet of the nearest edge of the right of way of a Federal-aid primary highway. The

evidence showed that the defendants had undertaken to erect some screen fencing between the junkyard and the highway, but it was not disputed that the junked and wrecked automobiles located in the junkyard were visible from some points along the main traveled portion of the highway, though the evidence was in conflict as to whether any of the automobiles which were in fact visible were actually themselves within 1,000 feet of the said right of way. At the conclusion of the evidence, the trial judge found from the evidence that the defendants were operating a junkyard in violation of the provisions of the Junkyard Control Act and he passed an order enjoining and restraining them from operating such junkyard and ordered the defendants to remove all junked cars and other evidence of the operation from said location without delay. From this order the defendant Burnham appealed.

Much argument is advanced by the appellant and the appellee with regard to whether or not the business of operating and maintaining a junkyard and the wrecking of automobiles and salvaging of parts therefrom constitutes a nuisance as a matter of law and, if not, whether the evidence showed that the business of the appellant was being operated in such a way as to constitute a nuisance per accidens, and if not, whether the legislature had the authority to pass a law declaring that the maintenance of such a business within 1,000 feet of the nearest right of way line of a federal-aid primary highway constitutes a nuisance where the only basis for such conclusion is an aesthetic consideration, and finally whether the legislature could in any event provide for the abatement of such business without also providing for the payment to the owner of just and adequate compensation. It seems to us palpably clear that all of this argument misses the mark. The Act passed pursuant to the Constitutional Amendment is in two parts, one part relating to existing junkyards and the other part relating to junkyards established after the effective date of the Act. No question is presented in this case as to a junkyard existing at the time the Act became effective, but it may be noted in passing that the Act expressly provides that the State shall pay for the screening or for the removal of any such existing junkyards if screening proves to be

unfeasible. The Constitutional Amendment in question expressly authorized zoning of land on each side of the highways designated in the Act to a depth or a distance from the right of way line of 1,000 feet in respect to the future establishment, removal, or control of junkyards. By Section 4 of the Act in question, the legislature has done just exactly what it was authorized to do by the zoning provision of the Constitutional Amendment, in that it forbade any person to establish, operate, or maintain a junkyard any portion of which is within 1,000 feet of the nearest edge of the right of way of any of the designated highways, unless such junkyards be screened by natural or artificial means, or are so located within 1,000 feet as not to be visible from the main traveled way of such highways or unless they be located in a zoned or unzoned industrial area, and by Section 11 it provided that any junkyard coming into existence after the effective date of the Act and which could not be made to conform to the requirements of the Act would constitute a nuisance subject to being abated. The legislature did not declare all junkyards to be nuisances, but only those established in particular locations adjacent to Federal-aid primary highways, and under particular circumstances or conditions. The power to zone land for particular uses necessarily includes the power to prohibit entirely a particular use within a given area or to impose reasonable conditions upon such use within such area in accordance with the purposes to be accomplished by such zoning. See *Vulcan Materials Co. v. Griffith,* 215 Ga. 811 (114 SE2d 29). Whether or not the legislature had authority under the Constitutional Amendment in question to declare those particular junkyards established contrary to the Act to be nuisances, it is unnecessary for us to determine since the Constitutional Amendment did expressly authorize the legislature to zone land adjacent to the highways described to a distance of 1,000 feet for the purpose of controlling the establishment of junkyards. The provisions of the Act declaring that junkyards established in contravention of the law would be unlawful and subject to being removed and destroyed had the effect of zoning such areas adjacent to the designated highways, and conferred upon the Highway Department sufficient authority to bring this action. Since the Act

contains a severability clause this provision would stand even though the "nuisance" provision might be invalid.

However, on the issue of whether or not the junkyard in question was within 1,000 feet of the nearest right of way line of the Federal-aid primary highway involved and specifically on the issue of whether any of the automobiles located therein and visible from the main traveled portion of such highway were within 1,000 feet of the nearest edge of the right of way the evidence was in conflict. If none of the junked cars visible from the main traveled portion of the highway were within 1,000 feet of the nearest edge of the right of way, there was no violation of the law, even though some of the cars not visible were within less than 1,000 feet of the right of way. The hearing appealed from was an interlocutory hearing on the question of whether or not a temporary injunction should have been granted. Under such circumstances two pertinent principles should have been given consideration by the trial judge. The first of these is the principle of balancing equities which this court recently applied in *Stephens v. State Hwy. Dept.,* 223 Ga. 713 (157 SE2d 751). While we do not have involved here the question of the propriety of an order for the removal of a permanent structure, as was there involved, still the trial court should have given consideration to the question of whether the grant of an injunction "would operate oppressively to the defendant." If so the injunction should have been refused. We think that under the circumstances of this case the grant of a temporary injunction requiring the removal of the automobiles from the location "without delay" would operate oppressively on the defendants' rights, especially since this was not such a case that the denial of a temporary injunction would have worked "irreparable injury" to the plaintiff or left the plaintiff "practically remediless" in the event it "should thereafter establish the truth of [its] contention." *Everett v. Tabor,* 119 Ga. 128, 130 (46 SE 72).

Secondly, the order appealed from, insofar as it required the removal of "all junk cars and other evidence of said operation from said location without delay" amounted to a permanent injunction. This order was beyond the authority of the judge to render at the interlocutory hearing. *Hardy v. Thomas,* 208

Ga. 752 (7) (69 SE2d 609). While under some circumstances an appropriate disposition of the case by this court would be to affirm the judgment granting the injunction with direction that the order be so modified as to render the injunction granted interlocutory instead of permanent (*Payton v. Ford,* 134 Ga. 587 (68 SE 300); *Oostanaula Mining Co. v. Miller,* 145 Ga. 90 (88 SE 562)), such a judgment in a case like this would be meaningless because in yielding obedience to any order, even one temporarily enjoining him from maintaining the junkyard at the location in question, the appellant would be required to perform the affirmative acts of either physically removing the automobiles from the loaction in question, or of screening them from the view of the traveling public using the main traveled portion of the highway. This the appellant should not be required to do until there has been a final adjudication of the issues of fact.

Therefore, the judgment appealed from is reversed, thus leaving open the question of whether, upon an appropriate trial of the issues of fact, the true facts justify the issuance of a permanent injunction.

*Judgment reversed. All the Justices concur.*