28916. OLLEY VALLEY ESTATES, INC. et al. v. FUSSELL et al.

HALL, Justice.
This is an appeal by the developer from a decision

---

of the Superior Court of Douglas County which ruled, following an interlocutory hearing, that the vote of the Commissioners of Roads and Revenues of Douglas County to re-zone certain property was null and void, and that all parties were enjoined from developing the property under the re-zoned classification.

The background of the litigation is, briefly, that Olley Valley Estates, Inc. (hereinafter, "Olley Valley") had petitioned to re-zone its property to allow the development of a mobile home subdivision and that the commissioners by a two-to-one vote granted the requested re-zoning though opposition was advanced at the hearing by appellees. Following the vote for re-zoning, appellees brought the superior court action against Olley Valley, the county, and the commissioners individually, seeking the injunction on grounds, among others, that the vote of Commissioner Joseph T. Smith, whose affirmative vote was determinative in allowing the re-zoning, had been influenced by personal considerations and that Commissioner Smith should be held disqualified.

It is critical to our action on this appeal that the superior court terminated the hearing and issued its decision after hearing extensive evidence on the alleged disqualification from appellees, but without hearing evidence from Olley Valley and the other appellants. Appellees acquiesce in the contention that due process therefore requires a rehearing to allow appellants to make their showing, and we will remand for that purpose. However, we are urged by appellants not to remand without determining certain of the contested points of law which will arise again on a new hearing. Accordingly, we will in this opinion decide three questions of law central to this dispute, namely, what is the standard under which a zoning commissioner may be determined to be disqualified from voting on a particular matter (Olley Valley enumerations 1 (g), 4, 5, 6 and 7; County enumerations XVI and XVII); should the injunction suit be dismissed against the county commissioners in their individual capacities (3, II, III and IV); and is the evidence at the injunction hearing limited to that admitted at the initial hearing on the re-zoning

request (10).

1. Turning to the first question, the parties hotly contest here whether a board of commissioners hearing a re-zoning application performs a function correctly described as quasi-judicial or quasi-legislative. The argument runs that, if the function is quasi-judicial a commissioner may be disqualified for a conflict of interest; but if the function is quasi-legislative the decision of the commissioners will stand unless it is clearly arbitrary and unreasonable, and the courts should not inquire into the motivation of the commissioners. Appellees further argue that if zoning, with its comprehensive community planning, is properly regarded as a legislative function, nonetheless re-zoning must be regarded as quasi-judicial because it requires an adjudicative determination. The superior court ruled with appellees. We find that the function in question, if it must be labeled, is quasi-legislative; but that like most labels this one does not answer the real question which is, in this case, what disqualifies the commissioner in a zoning matter?

A review of all the Georgia cases cited by the parties on this point makes clear that the Georgia view is that commissioners in voting on either a zoning or re-zoning proposal are functioning in a legislative capacity. E.g., *Cota v. Northside Hospital Assn.,* 221 Ga. 110, 112 (143 SE2d 167); *Vulcan Materials Co. v. Griffith,* 215 Ga. 811, 816 (114 SE2d 29); *Humthlett v. Reeves,* 212 Ga. 8 (90 SE2d 14); *Toomey v. Norwood Realty Co.,* 211 Ga. 814, 817 (89 SE2d 265); *Morgan v. Thomas,* 207 Ga. 660, 664 (63 SE2d 659); *Barr v. City Council of Augusta,* 206 Ga. 756 (4) (58 SE2d 825); *Story v. City of Macon,* 205 Ga. 590, 594 (54 SE2d 396). This is also, incidentally, the view of the Fifth Circuit which recently, in South Gwinnett Venture v. Pruitt, 491 F2d 5 (5th Cir. 1974), wrote with two dissents and one special concurrence that zoning was quasi-legislative and that there was no difference between the functions of zoning and re-zoning. The en banc opinion reversed the decision of the three-judge panel of the Fifth Circuit, which had found zoning legislative and re-zoning judicial. 482 F2d 389 (5th Cir. 1973). The Fifth Circuit also wrote that it would not apply

its own earlier case of Hornsby v. Allen, 326 F2d 605 (5th Cir. 1964) to zoning cases. 491 F2d, p. 7, n. 1. Hornsby had stated that "A governmental agency entrusted with the licensing power . . . functions as a legislature when it prescribes standards, but the same agency acts as a judicial body when it makes a determination that a specific applicant has or has not satisfied them." 326 F2d, p. 608. Building on the suggestion in Hornsby, our Court of Appeals in *Rogers v. Mayor &c. Atlanta,* 110 Ga. App. 114 (137 SE2d 668) wrote that the grant or withholding of a special use permit under a zoning ordinance was a judicial function. The Fifth Circuit has now disclaimed the reading that *Rogers* gave Hornsby, undercutting *Rogers* to that extent. However, *Rogers* may have continued viability because of the same fact that makes it irrelevant to this appeal: the special use permit considered in *Rogers* is basically different from an act of re-zoning, and many respectable authorities suggest that the former is properly regarded as a quasi-judicial act even though the latter is not.[1]

In any event, labeling a zoning or re-zoning function "quasi-legislative" will not terminate the inquiry into a commissioner's disqualification if he has a financial interest in the subject on which he is voting. This was the clear implication of the analogous cases of *Story v. City of Macon,* 205 Ga. 590 (54 SE2d 396) and *Crawford v. Brewster,* 225 Ga. 404 (169 SE2d 317) both of which concerned city councilmen subject to the conflict of interest provisions of Code § 69-204. The reasoning which underlies this conclusion that self-interested voting is improper despite its legislative character is set forth in 8 McQuillin, Municipal Corporations § 25.57 (1965): "Furthermore, zoning ordinances and regulations should be designed to promote the general welfare and other

---

[1] "Boards of zoning adjustment and review generally are deemed to be quasi-judicial bodies having quasi-judicial powers, functions and duties, essentially fact-finding and discretionary in character." 8A McQuillin, Municipal Corporations, § 25.230 (1965).

objectives specified in the statutes, rather than to benefit individual property owners or to relieve them from the harshness of the general regulation as applied to their property. Thus, a zoning measure may be invalid by reason of the fact that a member of the council which enacted the zoning ordinance or amendment, or a member of the zoning commission which recommended its enactment had an interest, direct or indirect, in the affected property, although in some cases the interest of a municipal legislator has not been regarded as material on the issue of the validity of the zoning measure. In any case, a remote or speculative interest will not warrant abrogation of the municipal action in which the officer participated."

The usual test has been stated as follows: "Fraud or bad faith with respect either to context or manner of arriving at a decision in an administrative zoning matter, is sufficient ground for judicial reversal thereof. But the motives of a zoning board are not, except with respect to fraud or bad faith, open to inquiry on judicial review." 8A McQuillin, Municipal Corporations § 25.313 (1965). Several analogous and helpful cases are discussed in the treatise, Rathkopf, The Law of Zoning and Planning, Ch. 22, § 3 (1972 Supp. for use in 1974) which concludes that "It would seem that the general rule against inquiring into the motives of the legislative body gives way as a matter of public policy where there is an allegation or appearance of corruption or fraud." In short, the unimportance to this point of the distinction between quasi-judicial and quasi-legislative labels has been recognized (see Note, Disqualification of Councilman for Personal Interest, 57 Mich. L. Rev. 423, 425 (1959)), and it has been suggested that "Although the courts have generally refrained from stating that the rule of nonreview of motives in legislative action should be abandoned, such a result has in effect been reached by various techniques which include invalidating legislative action where 'fraud' is involved, or classifying an action as quasi-judicial when in other circumstances it has been treated as legislative. Conceding that the difficulty of inquiring into the motives of municipal legislators may lead courts to follow the general rule of nonreview, it

would appear that in zoning actions policy arguments urge that the general rule not be applied, and that action involving self-interested votes be invalidated." Id. pp. 425-426.

Given this background, that inquiry into the possible disqualification of Commissioner Smith may proceed despite the quasi-legislative nature of the voting, we conclude that it is of no importance that the superior court applied the wrong label and termed the voting quasi-judicial. However, the questions of whether there actually was self-interested voting here and whether that degree of self-interest was disqualifying, may be answered by the superior court only by examination of the facts and circumstances presented by the whole record made upon rehearing when appellants have been given the opportunity to present their evidence. The question the superior court must answer is whether, under all the evidence, Commissioner Smith had a direct or indirect financial interest in the outcome of the zoning vote—an interest which was not shared by the public generally, and which was more than remote or speculative. See, *Crawford v. Brewster*, 225 Ga. 404 (1) (169 SE2d 317); *Story v. City of Macon*, 205 Ga. 590, 594 (54 SE2d 396); *South Georgia Power Co. v. Baumann*, 169 Ga. 649, 656 (151 SE 513). We further note here, in response to appellants' contention, that it is not necessarily fatal to an attempt to show disqualification, that the allegedly disqualifying act or interest did not take place or appear at the very moment the vote was cast, if it appears that the act or interest infected the vote. See Fleming v. City of Tocoma, 81 Wash. 2d 292 (502 P2d 327).

2. The second question we must address is whether appellees, having failed to raise at the zoning hearing the question of Commissioner Smith's disqualification, are therefore precluded from raising the question de novo in the superior court. The answer inheres in what we have written above: where self-interested voting has been alleged, the usual rule of only limited review of zoning decisions is abrogated, and judicial inquiry into all the pertinent surrounding circumstances is proper, and this is true whether or not the question of the commissioner's

possible bias was raised at the zoning hearing. We do not have here an appeal from an administrative decision and an associated requirement for the exhaustion of administrative remedies, as in, for example, *Dept. of Public Safety v. Foreman,* 130 Ga. App. 71 (202 SE2d 196), cited by appellants; instead we have a plenary suit in equity brought to enjoin the development of the property on grounds that the re-zoning decision was null and void. The evidence adduced at the zoning hearing does not restrict that before the superior court on the question of disqualification. See also Code Ann. §§ 69-1211.1, 6-501; 8A McQuillin, Municipal Corporations §§ 25.334-25.336 (1965).

3. The third question, whether the superior court erred in refusing to dismiss the suit against the commissioners individually, we answer in the negative. Though suits by and against a county are properly brought in the name of the county, Code Ann. §§ 2-7801, 23-1501, an injunction may be sought in a court of equity in an action which is brought against the governing officials of the county. *McGinnis v. McKinnon,* 165 Ga. 713 (141 SE 910); *Dancer v. Shingler,* 147 Ga. 82 (92 SE 935). "A suit of the character above mentioned differs from suits to obtain legal or equitable relief for or against counties. In suits of that character the county is the proper party." *McGinnis v. McKinnon,* 165 Ga. 713 (1a).

4. The remaining enumerations of error may become moot upon re-trial and therefore will not be decided.

This appeal is remanded to the Superior Court of Douglas County for rehearing and decision in accordance with the foregoing opinion.

*Case remanded with direction. All the Justices concur.*

ARGUED JUNE 11, 1974 — DECIDED SEPTEMBER 4, 1974 — REHEARING DENIED SEPTEMBER 24, 1974.

*Edwards, Awtrey & Parker, A. Sidney Parker, Green, Force & Alderman, William O. Green, Jr.,* for appellants. *Neely, Freeman & Hawkins, Paul M. Hawkins,*

*William G. Tabb, III, John L. Coney,* for appellees.

INGRAM, Justice, concurring.

I concur in the judgment requiring a rehearing in the trial court and agree that an independent determination can be made by a court of equity whether or not a particular zoning (or re-zoning) decision of a county governing authority is illegal and void. See, *Hopping v. Cobb County Fair Assn.,* 222 Ga. 704 (152 SE2d 356). However, I would add that the courts have no right to invade the province of the other departments of the government to review the merits of decisions made by the executive and legislative branches in the proper exercise of their constitutional powers. The Constitution of Georgia places the exclusive zoning power of a county in the governing authority and only the county governing authority can zone or re-zone property. *Humthlett v. Reeves,* 212 Ga. 8 (90 SE2d 14). Any judicial review of the exercise of this constitutionally delegated power must be limited to questions which reach the level of constitutional protections. It is the conflict between the competing constitutional powers of the county governing authority and the constitutional rights of the citizen that justify interference by the judiciary to achieve a constitutional balance. This objective is illustrated by prior decisions of this court. For example, there must be a notice and an opportunity for interested parties to be heard before a decision is made by the governing authority and there must be a meaningful hearing. *Pendley v. Lake Harbin Civic Assn.,* 230 Ga. 631 (198 SE2d 503). The action taken by the governing authority must not be arbitrary or unreasonable. E.g., see *Tuggle v. Manning,* 224 Ga. 29 (159 SE2d 703). But, if there is any evidence to sustain the action taken by the governing authority, the courts have no right to overturn that action. Again, the reason is that the power of the governing authority to make a zoning decision is rooted in the Constitution and it ought not to be interfered with when exercised consistently with constitutional safeguards. See, *Hunt v. McCollum,* 214 Ga. 809 (108 SE2d 275).

We have seen that a meaningful hearing is

mandated by constitutional due process requirements of fundamental fairness. This would also mean that a member of a county governing authority should not act on a zoning or re-zoning question in which he, or any member of his immediate family, has a financial interest not shared by the public generally. But, beyond the duty of the court to pass upon such questions of self interest, which infect due process fairness, there is a vast area of legislative motivations in which the courts have no right or expertise to explore under our constitutional scheme. Therefore, I do not believe the court properly can explore into the background of zoning decisions and effectively second-guess the judgment of city or county governing authorities. Any tendency toward a broader judicial review of zoning decisions is contrary to *Hunt v. McCollum,* supra, and I believe tends to erode the zoning power expressly delegated to county and city governing authorities in our state by the Georgia Constitution.